# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,　　　　　Case No. 15-20382
　　　　　Plaintiff,

v　　　　　　　　　　　　　　　　　　　　Hon. Victoria A. Roberts

**PAUL NICOLETTI**,
　　　　　Defendant.
_____

### DEFENDANT'S REPLY TO GOVERNMENT MOTION
### TO PRECLUDE EVIDENCE AND ARGUMENT

　　　　　　　　　　　　　　　　　　　　John Minock
　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　339 E. Liberty Street, Suite 200
　　　　　　　　　　　　　　　　　　　　Ann Arbor, Michigan  48104
　　　　　　　　　　　　　　　　　　　　734-668-2200; fax: 734-668-0416
　　　　　　　　　　　　　　　　　　　　jminock@cramerminock.com

## TABLE OF CONTENTS

**Statement of Issue Presented** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**Statement of Leading Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**Index of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  THE DEFENSE THEORY IS NOT THAT THE BANK WAS NEGLIGENT NOR THAT THE BANK DID NOT SUBJECTIVELY RELY ON THE ALLEGED MISREPRESENTATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. DEFENDANT DOES NOT INTEND TO INTRODUCE EVIDENCE THAT THE BANKS AND BANKERS WHO CAUSED THE MORTGAGE MELTDOWN OF 2007 AND THE FINANCIAL CRISIS OF 2008 GOT AWAY WITHOUT PROSECUTION . . . . . . . . 9

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF ISSUE PRESENTED

I. SHOULD THE GOVERNMENT MOTION TO PRECLUDE EVIDENCE AND ARGUMENT BE DENIED, WHERE DEFENDANT DOES NOT INTEND TO ASSERT BANK NEGLIGENCE OR RELIANCE IN DEFENSE?

## STATEMENT OF LEADING AUTHORITIES

*Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)

## INDEX OF AUTHORITIES

### CASES

*Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) . . . . . 4

*United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Jamieson*, 427 F.3rd 394 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 4

*United States v. McAuliffe*, 490 F.3d 525 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 4

*United States v, Moore*, 923 F. 2d 910 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Rigas*, 490 F.3d 208 (2nd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Winkle*, 477 F.3d 407 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 8

*Washington v. Texas*, 388 U.S. 14 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Introduction

The government has filed a motion in limine to preclude evidence and arguments it deems improper. R 48. Specifically, the government requests that the defense be precluded (1) from argument suggesting that Fifth Third bank invited or could have prevented the fraud; (2) from argument that the bank did not subjectively rely on particular misrepresentations; and (3) from referring to the mortgage meltdown of 2007 and the financial crisis of 2008 and the government's response, or lack of response, to it.

The motion should be denied. The government will open the door when it introduces testimony and detailed documentary evidence regarding a half dozen loans, three of which are charged in the indictment and three not. The motion is also based on a mischaracterization of the defense theories.

Fifth Third Bank employees, both indicted and unindicted, were involved in a widespread scheme to process numerous mortgage loans, regardless whether the loans qualified under the bank's criteria, in part because of bonuses the bank provided.[1] The government will call some former employees to testify, but seeks to limit the evidence to only those facts consistent with its theory. But relevance is not limited to

---

[1] The scheme involved dozens of mortgage loans outside this indictment in which Defendant had no part.

1

only that evidence which is consistent with the government's theory.

Defendant does not intend to assert the bank's negligence nor lack of subjective reliance as a defense. Defendant will present evidence and argument that the government cannot prove the elements beyond a reasonable doubt, including evidence attacking the credibility of the government's witnesses.

The right to call witnesses and to present a defense is a fundamental right guaranteed to Defendant by the compulsory process clause of the Sixth Amendment. *Washington v. Texas*, 388 U.S. 14, 18 (1967). Denial of that right by preclusion of defense evidence in this case would deprive Defendant of a fair trial and his Sixth Amendment rights.

**I.     THE DEFENSE THEORY IS NOT THAT THE BANK WAS NEGLIGENT NOR THAT THE BANK DID NOT SUBJECTIVELY RELY ON THE ALLEGED MISREPRESENTATIONS**.

In order to convict Defendant of bank fraud, in this case the government must prove that he knowingly took part in the submission of misrepresentations by borrowers to Fifth Third regarding material facts with the intent to defraud the bank. The government's theory is that Defendant knew misrepresentations were made by borrowers in the loan application process, that he aided and abetted the alleged misrepresentations with the intent to defraud the bank, and that the misrepresentations were material, i.e., that the bank would not have made the loans to the buyers but for

the alleged misrepresentation.

An element of bank fraud is that the scheme alleged included material misrepresentations. Defendant has a right to contest that element, both in cross examination and by presentation of his own evidence.

In *United States v. Rigas*, 490 F.3d 208 (2nd Cir. 2007), the Court of Appeals addressed the materiality for bank fraud:

> First, the government must prove that the defendant engaged in a deceptive course of conduct by making material misrepresentations. *Neder v. United States*, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *United States v. Rodriguez*, 140 F.3d 163, 167-68 (2d Cir. 1998). "A false statement is material if it has a 'natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Whab*, 355 F.3d 155, 163 (2d Cir. 2004) (quoting *Neder*, 517 U.S. at 16, 119 S.Ct. 1827). We have also held that "[t]o be material, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) (quoting *United States v. Mittelstaedt*, 31 F.3d 12088, 1217 (2d Cir. 1994)). Analysis of the misrepresentations must be in the context in which they were made. *See, e.g., Weinstock v. United States*, 231 F.2d 699, 702 (D.C.Cir. 1956) ("Materiality must be judged by the facts and circumstances in the particular case.").
> \* \* \*
> Second, the government must prove that the defendant, through the scheme, intended to victimize the bank by exposing it to loss. *United States v. Barrett*, 178 F.3d 643, 647-48 (2d Cir. 1999). 490 F.3d 231 (footnote omitted)

Part of the defense theory involves materiality and evidence from which the jury can draw a permissible inference regarding intent, namely whether the alleged

3

misrepresentations were reasonably calculated to deceive persons of ordinary prudence and comprehension. The materiality of a falsehood is a requisite element of bank fraud. *United States v. McAuliffe*, 490 F.3d 525, 531 (6th Cir. 2007), citing *Neder v. United States*, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The misrepresentation "must have the purpose of inducing the victim of the fraud to part with the property owner to undertake some action he would not otherwise do absent the misrepresentation or omission." *Id.*, citing *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003).

A misrepresentation is material if it has an actual tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed. *Neder*, 527 U.S. at 16. Defendant recognizes that *reliance* and *materiality* are two separate concepts, and that reliance is not an element of bank fraud. However, "the plain reading of *Neder* . . . indicates that the Supreme Court did not intend to remove the requirement that misrepresentations be worthy of reliance of credence." *United States v. Jamieson*, 427 F.3rd 394, 415 (6th Cir. 2005). Therefore, a scheme to commit bank fraud "must involve misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.*

In its motion, the government mischaracterizes the defense theory as a "blame the victim" argument. To the contrary, the theory is that the government cannot prove

4

the specific elements of the charge, including the existence of a misrepresentation by Defendant to the banks, materiality, and fraudulent intent. Defendant will contend that the alleged "false representations" were not made by him, and any representations he arguably made were not material to the lending decisions.

Defendant intends to cross examine the government's witnesses in detail about the bank employees' conduct to demonstrate that the alleged misrepresentations were not material. While the Government characterizes such proofs as evidence of negligence by the bank, the defense does not intend to utilize that phrase or that argument. The evidence is relevant, however, for the jury's determination regarding materiality to consider what the bank looked at and relied on in each of the respective loan transactions. In addition, the bias and motive for the bank witnesses to testify is relevant to the jury's credibility determinations.

Given the government's template for the prosecution of such cases and the tentative list of witnesses the government has provided, Defendant expects the government will seek to introduce evidence, both lay and expert, regarding the following facts:

    a.    the duties of buyer, seller, broker, loan processor, appraiser and underwriter when making applications, preparing loan packages, underwriting the loans, and submitting them to the lender and closing agent;

      b.      "red flags" that should alert the parties involved in approving a loan to the possibility of fraud;

      c.      the purpose of the Purchase Agreement and Loan Application;.

      d.      the representations by the seller and buyer on the applicable HUD-1 Settlement Statements and other closing documents;

      e.      mortgage fraud schemes; and

      f.      former bank employees' testimony regarding the questioned loans. processing, and approval, and the importance of seller disclosure.

The introduction of evidence on those topics will open the door wide to evidence regarding normal underwriting standards and the conduct of the bank in the loans at issue. Defendant will present evidence that the bank loan forms are completed by the buyer and a bank loan officer, not a title agent, and that the only forms signed by Defendant, the HUD-1's, do not contain misrepresentations made by him. The defense will also present evidence that any representations in the HUD-1's were made based upon closing instructions from the bank, that the bank had already made its lending decisions prior to the time of closing, and that the bank's processing of the loans shows that the alleged misrepresentations were not material to the lending decision. There will be evidence there were bank employees who manipulated the loan processing, including the underwriters who waived so-called "red flags," over

whom Defendant had no contact or control.

Defendant will not argue that the bank's negligence is a defense. Instead, Defendant intends to explain the loan approval and closing processes of each loan so the jury can determine whether Defendant was aware that misrepresentations were made, and whether they were material. Defendant is entitled to present evidence and argument explaining why the bank claims that facts were material to them when, in reality, the evidence will infer they were not.

The detailed documentary and testimonial evidence the government introduces will open the door to close examination of each of the loans at issue. The government motion effectively seeks to strip context from the loan transactions and to shield the witnesses from inquiry regarding their own conduct. A defense theory is that these loans would have been made regardless of the alleged misrepresentations, while the government will likely maintain the loans would not have been made without the alleged misrepresentations. When the jury considers whether the former bank employees are telling the truth, it is a fair for them to question whether they have incentives to protect themselves, and the answer is, from the defense perspective, that the bank has a very strong motivation to defend its underwriting practices.

The cases cited by the government are factually distinguishable and beside the point.. For example, *United States v, Moore*, 923 F. 2d 910 (1st Cir. 1991), involved

three bank employees who stole from their employer by creating loan applications for non-existent persons and splitting the proceeds.

In *United States v. Winkle*, 477 F.3d 407 (6th Cir. 2007), two people were involved in a check kiting scheme involving two different banks, one of which had a CEO who was engaged in unrelated embezzlement to which he confessed while an auditor was examining the check kiting scheme. The defendant in Winkle sought to introduce the audit report about that unrelated embezzlement and sought to establish that the CEO permitted the check kiting scheme, and the Sixth Circuit affirmed the trial court ruling that the report was irrelevant.

*United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006) involved another multi-bank check kiting scheme. Defendants maintained that the banks had approved the scheme, but it was established that they had not approved. In dicta, the Sixth Circuit said that even if bank officials had approved the kiting scheme, that would not have absolved the defendants of liability.

*McAuliffe, supra*, held that materiality is at the heart of the word "fraud" and that a misrepresentation which is immaterial cannot constitute fraud. One cannot fraudulently induce a victim by means of an immaterial misrepresentation. While it may be that better internal controls and diligence would have prevented fraud, that is not Defendant's theory. The theory regarding materiality is not that the bank

8

negligently ignored information, but rather the bank did not act on information available to it because that information was not material to the lending decisions. Such evidence is highly relevant to the jury's determination of materiality, and exclusion of the evidence and argument would deprive Defendant of a fair trial and constitute reversible error.

### III. DEFENDANT DOES NOT INTEND TO INTRODUCE EVIDENCE THAT THE BANKS WHO CAUSED THE FINANCIAL CRISIS OF 2008 GOT AWAY WITHOUT PROSECUTION.

The government also moves to preclude Defendant from referring to the "foreclosure crisis" and the government's response, or lack thereof, to it. While a reasonable view of the mortgage meltdown of 2007 and the subsequent financial crisis of 2008 is that the banks and bankers who almost caused a worldwide depression by virtue of criminal misconduct by and large got away without prosecution, Defendant does not intend to make that argument at trial.

9

## CONCLUSION

For all these reasons, Defendant requests that this Court deny the relief requested in the Government's motion.

Dated:  March 14, 2017	s/John Minock
	Attorney for Defendant
	339 E. Liberty Street, Suite 200
	Ann Arbor, Michigan  48104
	734-668-2200; fax: 734-668-0416
	jminock@cramerminock.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2017, I electronically filed the foregoing document with the  Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

	s/John Minock