UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

      Plaintiff,

                             File No. **15-cr-20382-01**

-vs-

                             Honorable **Victoria A. Roberts**

**PAUL NICOLETTI**,

      Defendant.

| **CRAIG A. WEIER (P33261)** | **JOHN K. NEAL** | **JAMES C. HOWARTH (P15179)** |
|---|---|---|
| Assistant U.S. Attorney | Assistant U.S. Attorney | Attorney for Defendant |
| 211 W. Fort Street, Suite 2001 | 211 W. Fort Street, Suite 2001 | 615 Griswold, Suite 820 |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| Phone: (313) 226-9678 | Phone: (313) 226-9644 | Phone: (313) 963-1455 |
| Email: craig.weier@usdoj.gov | Email: john.neal@usdoj.gov | Email: james-howarth@att.net |

## MOTION IN LIMINE TO PREVENT THE USE OF GOVERNMENT WIRE TAPS OF TELEPHONE CONVERSATIONS OF DEFENDANT PAUL NICOLETTI

Defendant PAUL NICOLETTI, by his attorney, JAMES C. HOWARTH, asks this Court to exclude from evidence in this case a series of excerpts of telephone conversations between Mr. Nicoletti and Alan Lucia, a former co-defendant, recorded, without Nicoletti's knowledge or consent, in February, 2006.

The basis of this Motion is first that these interceptions were made without the consent of all parties to the conversations, and were made without application for a search warrant to any court.  Second, the tapes violate Mr. Nicoletti's Fourth Amendment right to privacy.  Third, the tapes were made over thirteen years ago,

-1-

without proper supervision by the government and without proper authentication. Fourth, even if the recordings were legally admissible, their prejudicial effect far outweighs their probative value under F.R.E. 403.  Fourth, if the Court were to reject all of the above arguments, then fairness demands that rather than admit the selected portions proposed by the government, the "rule of completeness" found in F.R.E. 106, dictates that the tapes must be played in their entirety.  Lastly, the tapes are not properly authenticated under F.R.E. 901 and are largely unintelligible, thus rendering them untrustworthy.  See, attached Brief in Support.

Respectfully submitted,

/s/*James C. Howarth*

**JAMES C. HOWARTH (P15179)**
Attorney for Defendant Nicoletti
615 Griswold, Suite 820
Detroit, Michigan 48226
Phone: (313) 963-1455
E-Mail: james-howarth@att.net

Dated: April 12, 2019

-2-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    Plaintiff,

                               File No. **15-cr-20382-01**

-vs-

                               Honorable **Victoria A. Roberts**

**PAUL NICOLETTI**,

    Defendant.

| **CRAIG A. WEIER (P33261)** | **JOHN K. NEAL** | **JAMES C. HOWARTH (P15179)** |
|---|---|---|
| Assistant U.S. Attorney | Assistant U.S. Attorney | Attorney for Defendant |
| 211 W. Fort Street, Suite 2001 | 211 W. Fort Street, Suite 2001 | 615 Griswold, Suite 820 |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| Phone: (313) 226-9678 | Phone: (313) 226-9644 | Phone: (313) 963-1455 |
| Email: craig.weier@usdoj.gov | Email: john.neal@usdoj.gov | Email: james-howarth@att.net |

**BRIEF IN SUPPORT OF MOTION IN LIMINE TO
PREVENT THE USE  OF GOVERNMENT WIRE TAPS OF
<u>TELEPHONE CONVERSATIONS OF DEFENDANT PAUL NICOLETTI</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF FACTS AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# <u>TABLE OF AUTHORITIES</u>

**Page**

## CONSTITUTIONAL PROVISIONS

*U.S. Const. Am. IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

## FEDERAL CASES

*City of Ontario, Cal. v. Quon, 560 U.S. 746 (2010)* . . . . . . . . . . . . . . . . . . . . . . . 3

*Katz v. United States, 389 U.S. 347, 352 (1967)* . . . . . . . . . . . . . . . . . . . . . . .  iv,

*Kyllo v. United States, 533 U.S. 27, 33 (2001)* . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Minnesota v. Carter, 525 U.S. 83, 88 (1998)* . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Adams, 772 F.3d 788, 826 (6th Cir, 2013)* . . . . . . . . . . . . . . . . . . 9

*United States v. Ford, 761 F.3d 641, 652 (6th Cir. 2014)* . . . . . . . . . . . . . . . .  iv, 9

*United States v. Holden, 557 F.3d 698, 705 (6th Cir. 2009)* . . . . . . . . . . . . . . . . . 9

*United States v. Jenkins, 593 F.3d 480, 485-86 (6th Cir. 2010)* . . . . . . . . . . . . . . 6

*United States v. Merriweather, 78 F.3d 1070, 1077 (6th Cir. 1996)* . . . . . . . . . . . 6

*United States v. Schrock, 855 F.2d 327, 335 (6th Cir. 1988)* . . . . . . . . . . . . . . . . 4

*United Sates v. Smithers, 212 F.3d 306, 316 (6th Cir. 2000)* . . . . . . . . . . . . . . . . 10

*United States v. Wesley, 417 F.3d 612, 622 (6th Cir. 2005)* . . . . . . . . . . . . . .  iv, 5

*United States v. Wilson, 565 F.3d 1059, 1066 (8th Cir. 2009)* . . . . . . . . . . . . . . . 8

**Page**

## FEDERAL STATUTES AND COURT RULES

*18 U.S.C. §2510, et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 3
*18 U.S.C. §2511(1)(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

F.R.E. 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
F.R.E. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
F.R.E. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5
F.R.E. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
F.R.E. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## MICHIGAN STATUTES AND COURT RULES

M.C.L. 750.539c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATEMENT OF ISSUES

**ARE CERTAIN TAPE RECORDINGS OF TELEPHONE CON-VERSATIONS BETWEEN DEFENDANT AND A FORMER CO-DEFENDANT, INITIATED BY THE GOVERNMENT, ADMISSI-BLE IN EVIDENCE?**

## STATEMENT OF CONTROLLING AUTHORITY

Defendant relies on the following controlling authority:

*U.S. Const. Am. IV*

*Katz v. United States, 389 U.S. 347, 352 (1967)*

*United States v. Wesley, 417 F.3d 612, 622 (6th Cir. 2005)*

*United States v. Ford, 761 F.3d 641, 652 (6th Cir. 2014)*

*18 U.S.C. §2510, et seq.*

*F.R.E. 106*

*F.R.E. 403*

*F.R.E. 901*

*M.C.L. 750.539c*

## STATEMENT OF FACTS AND ARGUMENT

### I.    BACKGROUND

The government has indicated to defense counsel and the Court its intention to attempt to introduce certain tape recorded telephone conversation between defendant Paul Nicoletti and former co-defendant Alan Lucia into evidence in the trial of this case.[1]  These telephone tapes, made with the consent of Lucia, but not Nicoletti, were created at the behest of the government and the FBI agents who are in charge of this case.   Presumably Mr. Lucia received, or expected to receive, some sentencing consideration for his cooperation with the government by luring defendant Nicoletti into making incriminating statements during what Nicoletti thought were innocuous, friendly, bantering, give-and-go between old acquaintances.  They were, instead, insidious traps, designed to catch Nicoletti off guard, and possibly induce him to make remarks capable of being misunderstood as a confession.

According to the government's proffer, the proposed evidence will consist of the following highlights:

"02/03/06 [February 3, 2006?] Telephone call: Nicoletti/A. Lucia: ID 2-3 includes 'Yeah, we're gonna be in jail together.  Might as well get started.'"

---

[1]The government's proposed exhibit list, item #94, contains excerpts from several telephone calls between defendant Nicoletti and former co-defendant Alan Lucia, intercepted at the request of the FBI in February, 2006.

"02/03 - 06/06 (nail down date) Telephone call: Nicoletti/A. Lucia: ID 3-6: Excerpt at 29:36-30.16, Tr. at p. 5-6 includes 'we might have to change it and forge some signatures on it - you like how casually I say that - Eh, that's my job.'"

"02/06-07/06 Telephone Call: Nicoletti/A.Lucia: ID 5-6: Excerpt at 24:45-25:13, TR at pp. 1-2 includes 'We got the dog to keep her company when I'm in the big house.'"

"02/13/06 Telephone Call: Nicoletti/A.Lucia: ID 9-2: at 24:45-2:50, TR at pp.1 includes 'the fucking feds.'"

"02/13/06 Telephone Call: Nicoletti/A.Lucia ID 9-3: Full Conversation at 4:33 to 13:14, containing, at 8:28: 'two rules: ...nothing good ever happens when the fucking feds show up'; 9:20: subpoena review 'records identifying all shareholders, employees and officers of Continental. Uh, oh. That's not good', at 11 :10: 'You know, Cham,[2] it looks like we're all gonna be indicted'; and at 11 :40: 'we'll certainly find out' if they still bust rocks at Leveanworth."

Defendant Nicoletti objects to the introduction of all or any of the above excerpts for several legal reasons. The first of which is that the conversations are clearly more prejudicial than probative.

## II.     THE TAPED CONVERSATIONS WERE INTERCEPTED ILLEGALLY.

Paul Nicoletti, in February, 2006, had a reasonable expectation of privacy during telephone conversations he engaged in with his friend, Alan Lucia, which expectations were violated by the government tap on Mr. Lucia's phone. " [A] Fourth

---

[2]According to Paul Nicoletti, "Cham" is a particular term of endearment, used interchangeably, between himself and Alan Lucia.

-2-

Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States, 533 U.S. 27, 33 (2001)*.   Therefore, Mr. Nicoletti must establish that he had a reasonable expectation of privacy in talking to his friend, Alan Lucia, on his own telephone. *Minnesota v. Carter, 525 U.S. 83, 88 (1998)*.  Society has recognized that a privacy expectation in a telephone conversation is reasonable. *Katz v. United States, 389 U.S. 347, 352 (1967)*.  Apparently the expectation extends to cellular phones as well as land lines. *City of Ontario, Cal. v. Quon, 560 U.S. 746 (2010)*.

Both federal law (*18 U.S.C. §2511(1)(b)*) and Michigan law (M.C.L. 750.539c) forbid interception, without warrant, of private telephone conversations without the consent of all parties.  Whether or not Alan Lucia consented to the intercept search is not material, inasmuch as Paul Nicoletti did not.

If the Federal Bureau of Investigation, whom the government will readily admit set up and monitored the phone taps, wanted to see if they could intrigue Nicoletti into confessing guilt, they had a the viable option of securing a court ordered intercept under Title III of the Omnibus Safe Streets Act of 1968. (*18 U.S.C. §2510, et seq.*).

### III.   THE GOVERNMENT'S PROPOSED EVIDENCE IS INADMISSIBLE UNDER F.R.E. 403.

Defendant assumes that the questioned tapes are offered as admissions of a party opponent.[3]  Whereas defendant does not concede the relevance of the offered testimony, he argues that regardless of relevancy under F.R.E. 401, the evidence should be excluded under F.R.E. 403 because its probative value "is substantially outweighed" by the danger of unfair prejudice.

First, it should be noted that no where in the government's rendition of the intercepted conversations does Nicoletti admit that he committed fraud or intended to commit any crime.  His words are a fairly obvious banter with not only a co-defendant, but, more importantly, with someone he (wrongfully) thought was a friend. Unfortunately for defendant, the use of the cleverly edited excerpts conveys the unfair and untrue impression that Nicoletti is confessing guilt, rather than ridiculing the charge which he foresees in the future.  As the Sixth Circuit explained the argument against admitting such evidence, unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Schrock, 855 F.2d 327, 335 (6th Cir. 1988)*.  If one knows the whole story,

---

[3]It is possible, though unlikely, that the government considers them to be other wrongful acts under F.R.E. 404(b), but if so, the government has failed to file proper notice of that allegation.  It is also possible that the government considers them statements by a co-conspirator during the course of, and in furtherance of, the conspiracy.  However, neither explanation has been forthcoming.

it is clear that Nicoletti is not admitting guilt, but really is engaging in a form of "gallows humor" with a sadly traitorous friend.

In a case exceptionally similar to the matter before the Court, the government was allowed at trial to introduce tape recorded conversations between defendant and a person he believed was a co-conspirator. On a secretly recorded videotape the defendant tells his wired cohort, "Yeah. I've been knowin' this brother all my life. We went to prison together. We did something together. We got caught, we went to trial. Ain't nobody tell on nobody. You know what I'm saying? I ain't going, hell, no. I ain't no fool." Defendant argued that the above, recorded conversation must be excluded under F.R.E. 403. Relying in part on *Schrock, supra*, the Sixth Circuit in *United States v. Wesley, 417 F.3d 612, 622 (6th Cir. 2005)* held:

> While the statements were relevant to show defendant's intent, it was hardly the only or the strongest evidence in that regard. As the district court recognized in deciding to give a cautionary instruction, reference to defendant's prior incarceration presents a classic danger of unfair prejudice—that the jury may decide guilt based on the fact that the defendant has a prior conviction. This is particularly a concern where the evidence presents a close question on the sufficiency of the evidence. Although the cautionary instruction reduces the danger of unfair prejudice, we find that the probative value of the evidence in this case was substantially outweighed by the danger of unfair prejudice and, therefore, defendant is entitled to a new trial.

The spirit of the *Wesley* case is clearly applicable in the case before the Court. Defendant Nicoletti does not admit guilt in this case, instead he jokes about it with a

-5-

person whom he believes will be a co-defendant.  However, the jury may easily misconstrue this, and then the effect will become catastrophic.  That is the purpose of Rule 403 - to keep the jury from being misled by evidence that is marginally probative, but overwhelmingly prejudicial.

Another factor to be considered in a Rule 403 analysis is whether the government is capable of proving its point with other, less objectionable evidence. Certainly, to put before the jury evidence which was obtained when one party to a conversation believed he spoke with a good friend, in earnest, wherein he could "let his hair down" and joke, even about such a serious subject as possible incarceration, while the other party acted as a police agent, using cunning and false good will to trick his unsuspecting confidant into an embarrassingly silly statement, stretches the concepts of fair play and reliable evidence.

It is for the above reason that the Sixth Circuit has strongly suggested that the government, when faced with a situation like the present one, look to other evidence to prove its point.  See, *United States v. Jenkins, 593 F.3d 480, 485-86 (6th Cir. 2010)* ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof") (citing, *United States v. Merriweather, 78 F.3d 1070, 1077 (6th Cir. 1996)*.

-6-

In summary, the relevancy of the evidence contained in Nicoletti's conversations with Lucia is, at best, marginal. The prejudice, especially if the jury may take defendant literally, when it is clear beyond peradventure that he is speaking "tongue-in-cheek", is overwhelming. The clear purpose of Rule 403 is to take a long, hard look at evidence which is otherwise admissible, and then determine whether the danger of unfair prejudice renders it simply "unfair." Such is the case here, and, therefore the rigged phone conversation evidence should be suppressed.

## IV. THE TAPES IN QUESTION ARE INADMISSIBLE FOR LACK OF AUTHENTICATION.

The tapes in question were recorded over thirteen (13) years ago, with, at best, minimal oversight by the FBI, on poor grade equipment. They are largely unintelligible. Added to the above, there are questions about chain of custody.

F.R.E. 901 sets forth the basic rule that the proponent of evidence must first put forward proof "sufficient to support a finding that the item is what the proponent claims it is." F.R.E. 901(a).

Further, the burden is on the government to show an unbroken and untainted chain of custody. "In order for evidence to be admissible, a chain of custody must exist that shows a reasonable probability that the evidence has not been changed or

altered." *United States v. Wilson, 565 F.3d 1059, 1066 (8th Cir. 2009)* (internal citations omitted).

These objections are not mere speculation or conjecture. If the Court wishes to listen to any appreciable portion of the full tapes, the poor quality of them will adequately confirm defendant's misgivings. The taping was not monitored directly by the FBI. In fact, Mr. Lucia was left to his own discretion in choosing when and how to catch Mr. Nicoletti in what appear to be incriminating comments, and we have no way of knowing why the communications are so rigged. Therefore, the tapes should be ruled inadmissible.

## V. IF THE GOVERNMENT IS ALLOWED TO INTRODUCE ANY EXCERPT OR EXCERPTS OF THE SURREPTI-TIOUS TAPES, THEN THE JURY MUST BE ALLOWED TO HEAR ALL OF THE RECORDINGS.

It appears from the volume of the recordings which have been provided by the discovery given by the government to former counsel that there are approximately thirteen (13) hours of recorded phone calls between Nicoletti and Lucia. The problem for the defense is that substantially all of the excerpts the government wants admitted are explained, modified or otherwise have their derogatory imprint altered by hearing all of the conversations.

-8-

The Federal Rules of Evidence provide for this contingency in F.R.E. 106 which states that:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

"The 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted parts in proper context." *United States v. Holden, 557 F.3d 698, 705 (6ᵗʰ Cir. 2009)* (cited in *United States v. Ford, 761 F.3d 641, 652 (6ᵗʰ Cir. 2014)*).

The only pertinent exception to the above rule is that it does not allow the admission of otherwise inadmissible hearsay. See *United States v. Adams, 772 F.3d 788, 826 (6ᵗʰ Cir, 2013)*.

Defendant Nicoletti argues that statements, particularly like those suggesting that he may find out about "breaking rocks" at "Leveanworth" or "we might have to . . . forge some signatures . . .", are explainable in the whole context of the many conversations in two, separate ways. First, when the entirety of the phone calls are heard, it eventually becomes apparent that Nicoletti is given to laughing off the fact that he is being investigated by the FBI, with a long series of ridiculous jokes about

a situation he just doesn't think is serious.  Second, statements about forgery are only

properly understood with a full hearing about what documents are being discussed and

why he would even consider alterations.[4]

The government set out to get defendant to incriminate himself by selecting a

modern day Brutus to play the role of a friend, while really desperately trying to trick

his good pal, Nicoletti, into incriminating himself.  The government wants all the

wheat that came from the entrapment mill, but refuses to also accept the grist which

was a component of their plan.  The Court, if it chooses to give the government the

best excerpts, must, in common fairness allow the bad with the good.  The entirety of

the tapes should be admitted.

---

[4]The government may well complain that to spend the necessary trial time to
listen to the full conversations will unnecessarily tax the Court and the jury with
hours of listening to uninspiring conversation.  The answer to any such anticipated
complaint is two-fold.  First, it was the government, and their agents (the FBI and
Alan Lucia) who dictated the length and breadth of the tapes, and, hence, they have
no right to complain about their time consumption before a jury.  Second, if there
is a legitimate argument about the senseless use of time in listening, then the
solution is simply to not play them at all.  See, e.g. *United Sates v. Smithers, 212
F.3d 306, 316 (6th Cir. 2000)* (explaining F.R.E. 403's exclusion of evidence for
"waste of time").

-10-

## <u>CONCLUSION</u>

**WHEREFORE**, Defendant Paul Nicoletti, requests this Honorable Court grant

this motion.

Respectfully submitted,

/s/*James C. Howarth*

**JAMES C. HOWARTH (P15179)**
Attorney for Defendant Nicoletti
615 Griswold, Suite 820
Detroit, Michigan 48226
Phone: (313) 963-1455
E-Mail: james-howarth@att.net

Dated: April 12, 2019

-11-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

     Plaintiff,

                           File No. **15-cr-20382-01**

-vs-

                           Honorable **Victoria A. Roberts**

**PAUL NICOLETTI**,

     Defendant.

## CERTIFICATE OF SERVICE

I, **JAMES C. HOWARTH**, hereby certify that on the 12th day of April 2019,

I electronically filed **Motion in Limine to Prevent the Use  of Government Wire**

**Taps of Telephone Conversations of Defendant Paul Nicoletti** with the Clerk of the

Court using the ECF system which will send notification of such filing to the

following: **Honorable Victoria A. Roberts and AUSA Craig Weier**.

                           Respectfully submitted,

                           /s/ *James C. Howarth*

                           **JAMES C. HOWARTH (P15179)**
                           Attorney for Defendant Nicoletti
                           615 Griswold, Suite 820
                           Detroit, Michigan 48226
                           Phone: (313) 963-1455
                           E-Mail: james-howarth@att.net

Dated: April 12, 2019