## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**

Plaintiff,

Case No. 15-cr-20382

**D-1  PAUL NICOLETTI,**                    HON. VICTORIA A. ROBERTS

Defendant.

---

Craig A. Weier (P33261)          John K. Neal                    James C. Howarth
Assistant U.S. Attorney          Assistant U.S. Attorney         Attorney for Defendant
211 W. Fort Street, Ste. 2001    211 W. Fort Street, Ste. 2001   615 Griswold, Suite 820
Detroit, Michigan  48226         Detroit, Michigan 48226         Detroit, Michigan  48226
(313) 226-9678                   (313) 226-9644                  (313) 963-1455
craig.weier@usdoj.gov            jneal2@usdoj.gov                james-howarth@att.net

---

## GOVERNMENT'S RESPONSE AND SUPPORTING BRIEF
## IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
## TO PREVENT THE USE OF GOVERNMENT WIRE TAPS OF
## TELEPHONE CONVERSATIONS OF DEFENDANT PAUL NICOLETTI

# TABLE OF CONTENTS

**<u>Page</u>**

Index of Authorities…………………………………………………………….. iii

Statement of Issues…………………………………………………………… iv

Statement of Controlling Authority……………………………………… v

Response……………………….………………………………………………….. 1

Brief in Opposition to *Motion in Limine*…………….…………………….. 2

Relevant Facts ................................................................................. 3

Argument ......................................................................................... 5

Conclusion/Relief Sought…………………………………………………… 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*United States v. White,* 401 US 745, 751-53 (1971) .................................. 6

*United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) ...................... 7

*United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) .................. 7

*United States v. Wesley,* 417 F.3d 612, 622 (6th Cir. 2005) ........................ 8

*United States v Turner*, 718 F.3d 226, 232 (3rd Cir. 2013) ........................ 11

*United States v. Mallory*, 902 F.3d 584, 595 (6th Cir. 2018) ..................... 11

*United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983 ................... 12

*United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982) .................... 13

*United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) .................... 13

*United States v. Price,* 516 F.3d 597, 604 (7th Cir. 2008) ........................ 14

## FEDERAL RULES AND STATUTES

18 U.S.C. § 2511(1)(b) ........................................................................... 5

18 U.S.C. § 2511(1)(c) and (d) ............................................................. 5

F.R.E. 403 ............................................................................................. 7

F.R. E. 901(a) ...................................................................................... 11

F.R.E. 901(b)(1) .................................................................................. 11

F.R.E. 106 ........................................................................................... 13

## STATEMENT OF ISSUES

1. **Does federal law prohibit one-party consensual recording of telephone conversations, despite the fact that 18 U.S.C. 2511(2)(c) expressly permits such recording?**

2. **Should consensually recorded tapes of the defendant's statements be excluded under Federal Rule of Evidence 403, when the defendant has identified no unfair prejudice that would result from the tapes' admission, and where the defendant's statements are highly probative of key disputed issues in the case?**

3. **Should consensually recorded statements of the defendant be excluded for lack of authentication pursuant to Federal Rule of Evidence 901, when both the creator of the tapes and the agent who supervised the recording are available to testify, and the tapes are audible?**

4. **Does Rule 106 of the Federal Rules of Evidence require playing 13 hours of consensually recorded conversations instead of the govenrment's selected excerpts, when defendant has identified no misleading impressions that would be created by playing the government's excerpts, and the balance of the tapes contains numerous irrelevancies and inadmissible hearsay?**

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

The government relies on the following controlling authority:

*United States v. White,* 401 US 745, 751-53 (1971)

*United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988)

*United States v. Mallory*, 902 F.3d 584, 595 (6th Cir. 2018)

*United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**

                Plaintiff,

                          Case No. 15-cr-20382

**D-1  PAUL NICOLETTI,**           HON. VICTORIA A. ROBERTS

                Defendant.

_____/

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO PREVENT THE USE OF GOVERNMENT WIRE TAPS OF TELEPHONE CONVERSATIONS OF DEFENDANT PAUL NICOLETTI

The United States of America, for the reasons set forth in the accompanying brief, respectfully requests that the Court deny the defendant's Motion *in Limine*.

                        Respectfully submitted,

                        MATTHEW SCHNEIDER
                        UNITED STATES ATTORNEY

                        s/John K. Neal
                        John K. Neal
                        Assistant U.S. Attorney

                        s/Craig A. Weier
                        Craig A. Weier
                        Assistant U.S. Attorney

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**

     Plaintiff,

          Case No. 15-cr-20382

**D-1  PAUL NICOLETTI,**     HON. VICTORIA A. ROBERTS

     Defendant.

_____/

### GOVERNMENT'S BRIEF IN OPPOSITON TO DEFENDANT'S MOTION *IN LIMINE* TO PREVENT THE USE OF GOVERNMENT WIRE TAPS OF TELEPHONE CONVERSATIONS OF DEFENDANT PAUL NICOLETTI

The United States of America, by and through its attorneys, respectfully opposes defendant Paul Nicoletti's Motion in Limine To Prevent the Use of Government Wire Taps of Telephone Conversations of Defendant Paul Nicoletti. Nicoletti's motion argues that: (1) recorded telephone conversations between Nicoletti and a cooperating witness were illegally obtained; (2) that Federal Rule of Evidence (FRE) 403 requires the conversations be excluded, as they are more prejudicial than probative; (3) that the telephone conversations cannot be properly authenticated, and (4) that FRE 106 (the "rule of completeness") requires that the entire 13 hours of recorded conversations be played, as opposed the government's selected excerpts.

Defendant's motion is meritless. The recorded conversations were not "wire taps" but were rather consensually recorded calls. The government's use of such recordings is perfectly legal, as plain statutory text and Supreme Court authority make clear. Defendant has identified no "unfair prejudice" that would result from playing the recorded calls, and they are highly probative of key issues in the case. The government intends to provide a more than adequate foundation establishing the authenticity of the tapes, as both the cooperating witness who made the tapes and the FBI agent overseeing their creation will be testifying at trial. And finally, the "rule of completeness" does not require playing hours of tape beyond the government's proposed excerpts, especially when the defendant has identified no specific concerns with the completeness of the government's submissions, and when the remainder of the tapes are filled with material that is otherwise inadmissible. Defendant's motion should be denied in its entirety.

## **RELEVANT FACTS**

No government wiretaps were conducted during the investigation of this case.  Rather, at the inception of the investigation, a cooperating target and friend of Nicoletti's agreed to record telephone conversations between himself and Nicoletti at the request of the F.B.I. in order to advance the investigation.

3

From Februray 3, 2006 to February 22, 2006 approximately 62 conversations between them were tape-recorded, and the tapes turned over to the case agent. In total, there are approximately 13 hours of recorded conversations. Copies of all of these conversations, along with their written transcriptions, were provided to the defense on August 11, 2016. On Januray 25, 2019 the government advised Nicoletti by email, with great particularity, of the specific excerpts of the tapes that it might offer at trial. The excerpts concerned various topics, including (1) Nicoletti's expectation of indictment and conviction; (2) Nicoletti's destruction of computer files pertaining to the loans; (3) Nicoletti's receipt of a grand jury subpoena and shredding of documents in response; (4) Nicoletti's consideration of creating evidence (bogus "seller's concessions") to exculpate himself; and (5) Nicoletti's admission that the borrowers did not bring down payments to closing as he represented to the lender.

At trial, the government intends to use the cooperating witness himself to lay the proper foundation for the admission of the audio excerpts. Prior to trial, he will have listened to not only the excerpts, but all of the recorded conversations to insure that they are genuine.

4

# ARGUMENT

## 1.  The Recorded Conversations Were Legally Obtained.

Nicoletti's first argument to keep the jury from hearing these conversations is that they were illegally obtained because only one party to the conversations consented to their recording. (Doc.118: Motion at 2-3).  He argues that one-party consensual monitoring is "forbidden" by federal law, citing 18 U.S.C. § 2511(1)(b), and the Court should therefore bar them from evidence.  What he fails to tell the Court, however, is that §2511(1)(b) starts with the phrase "[e]xcept as otherwise specifically provided in this chapter" and that the same statute specifically provides for the exception presented by the facts of this case:

> (c) it shall not be unlawful under this chapter for a person acting under the color of law to intercept a wire, oral, or electroinc communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception;

> (d) it shall not be unlawful under this chapter for a person not acting under the color of law to intercept a wire, oral, or electroinc communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(1)(c) and (d).   And if these provisions were not clear enough, the United States Supreme Court long ago upheld the legality of consensual monitoring in the context of a criminal investigation. *United States v. White,* 401 US 745, 751-53 (1971)(testimony of government agents who monitored conversation by way of radio transmission was admissible because the informant consented to wear the transmitter and was a party to the conversation with the defendant).  The proffered recordings were legally obtained.  Defendant's argument to the contrary borders on the frivolous and should be rejected by this court.

2.   **Rule 403 Is No Bar to Admission of the Proposed Tapes, as Nicoletti Articulates No Unfair Prejudice that Would Result From Admission, and the Tapes are Probative of Key Issues in the Case**

Nicoletti argues that the recorded conversations should be excluded under FRE 403 because their probative value is "substantially outweighed" by the danger of unfair prejudice. Nicoletti does not specify the unfair prejudice that will result from the admission of these conversations; rather, he argues that they will be interpreted by the jury in a manner that suggests guilt, when in fact, they reflect nothing more than innocuous banter among friends.

Nicoletti's argument fails. The "danger" that the jury will interpret the tapes differently from the way Nicoletti believes they should be interpreted is

not "unfair prejudice" under the framework of Rule 403. Moreover, the tapes are highly probative of a number of the core issues in the case. Given these facts, Rule 403 should not be used to exclude these tapes from evidence in the government's case-in-chief, and defendant's argument on this point is without merit.

Pursuant to Rule 403, a district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403.  "Courts have routinely rejected the claim that a party was unfairly prejudiced under Rule 403 because the challenged evidence was contrary to his view of the facts." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) (collecting cases). The *Schrock* court went on to note that "Unfair prejudice, as used in Rule 403, does not mean the damage to defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *Id*, citing *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).

The only "unfair prejudice" Nicoletti identifies that is associated with the tapes is the danger that the jury will interpret conversations he describes as "fairly obvious banter" or "gallows humor" as admissions of guilt. Doc. 118;

7

Def's Motion at 4-5. Nicoletti is certainly free to argue his position that the tapes are nothing but a series of dark jokes to the jury, but that is a question of the weight the jury should give the tapes, not a question of their underlying admissibility. Nicoletti does not argue that the tapes will lead the jury to decide key issues on extraneous, improper bases, but rather that the jury may construe the tapes differently from the way he thinks they ought to be construed. This is precisely the sort of claim that the Sixth Circuit and other courts have rejected; as the court noted in *Schrock*, unfair prejudice does not result from the admission of evidence "contrary to [defendant's] view of the facts." *Schrock*, 855 F.2d at 335.

In his brief, Nicoletti cites *United States v. Wesley,* 417 F.3d 612, 622 (6th Cir. 2005) as an instance where a relevant recorded statement from a defendant was held to be excludable on Rule 403 grounds. Doc. 118, Def's Motion at 5. *Wesley* is readily distinguishable from the instant case.  In the recorded statement at issue in *Wesley*, the defendant referenced his prior incarceration, a highly prejudicial fact that would otherwise not have been before the jury at trial.  The "unfair prejudice" in that case came from the danger that the jury would use the defendant's prior incarceration to decide his guilt – the very definition of the sort of "improper basis" for a decision that Rule 403 is designed to protect against. Nicoletti points to nothing similarly prejudicial in

his own statements, and *Wesley* thus provides no support for the defendant's position.

Nicoletti's failure to identify unfair prejudice alone is fatal to his claim that FRE 403 should bar the admission of this relevant evidence. However, in addition to the absence of unfair prejudice, it is also noteworthy that the tapes in question are admissions of a party that are highly probative of key issues in the case. For example, Nicoletti will presumably dispute that he had any criminal intent with respect to the mortgage transactions at issue in the case. His position is forcefully rebutted by the fact that the relevant tape excerpts, transcripts of which will be provided to the Court on April 19, 2019, are replete with evidence of consciousness of guilt on Nicoletti's part. He repeatedly talks about the likelihood of being indicted and going to jail.[1] Nicoletti also discusses shredding documents and computer files and otherwise obstructing justice, which is likewise highly probative of consciousness of guilt.[2]

Finally, a key aspect of the scheme to defraud involved the use of "straw buyers," whose documentation was falsified in order to make it appear, among other things, that they had the assets to make a down payment on expensive

---

[1] *See*, *e.g.*, Government Exhibits 105, 99A.

[2] *See*, *e.g.*, Government Exhbit 100A (Nicoletti: "I'm shredding those directories because I'll tell ya if somebody. If somebody got a hold of those fucking soft pro directories. You know that showed all the multiple changes to those those changes the track the history to those HUDs and all the changes that were made . . . And that wouldn't be good.")

pieces of property.  These straw buyers were supposed to bring money for the down payment, from their own private resources, to closing. On several occasions on the tapes, Nicoletti acknowledges knowing that straw buyers did <u>not</u> bring money for the down payment to closing, and did not have the assets to support the down payments. *See, e.g.,* Government Exhibit 102B (Nicoletti: "you know, the fact is that Scottie (a straw buyer) didn't have a million two in the bank I mean is, is one thing enough to submarine the whole deal I mean so what I mean."; Government Exhibit 105 Nicoletti: " . . . you know the jur, the jury ever gonna fuckin' believe that and it, and it looks so bad that on, on two or three of the transactions the fuckin' seller the fuckin' uh buyers didn't bring money to the closing . . . ."   These admissions of knowledge on Nicoletti's part go to one of the most critical issues in the case, and their probative value far outweighs any unfair prejudice that could possibly be linked to these admissions. Nicoletti's arguments under Rule 403 are unsupported and unsupportable, and the Court should reject them.

### 3.  The Government is Able to Authenticate the Tapes

Nicoletti further challenges the admission of the tapes on authenticity grounds, arguing that the taped conversations lack an adequate chain of custody, are "unitelligible," and are otherwise unable to be authenticated. Dkt

118, Def's Motion at 7-8. Nicoletti's argument is without merit, for the reasons set forth below.

Federal Rule of Evidence 901(a) requires that the proponent of a piece evidence "produce evidence sufficient to support a finding that the item is what the proponent claims it is." F.R. E. 901(a). The burden is not a heavy one; Rule 901 simply requires a "slight" showing of "some competent evidence to support authentication." *United States v Turner*, 718 F.3d 226, 232 (3rd Cir. 2013); see also *United States v. Mallory*, 902 F.3d 584, 595 (6th Cir. 2018) (describing the burden of establishing authenticity as a "relatively low hurdle"). Rule 901(b) provides a non-exhaustive list of ways to satisfy the authenticity requirement. One such method of establishing authenticity the "testimony of a witness with knowledge that an item is what it is claimed to be" F.R.E 901(b)(1).

In this case, the government intends to call a particular cooperating witness in its case-in-chief. This cooperating witness, working under the direction of the FBI, made the recordings at issue. His testimony will establish that he recorded the tapes and that the tapes consist of conversations that he had with defendant Nicoletti. He will have listened (again) to all of the tapes prior to his trial testimony, and will be able to verify that the tapes are an accurate recording of conversations he had with Nicoletti during the relevant

11

timeframe. The government anticipates that he will also describe what he did with the tapes after they were made.  The government further expects to be calling Special Agent Christine Taylor, who oversaw the creation of the tapes. Special Agent Taylor can address questions about the maintenance of the tapes since their creation or other chain-of-custody questions. In short, the government intends to supply more-than-adequate witness testimony, from witnesses with knowledge, that the tapes are what they purport to be. There is no factual basis for suggesting otherwise, and this foundation is more than sufficient to overcome the "low hurdle" for authentication of evidence established by FRE 901.

Nicoletti also asserts that the tapes are "unintelligible" and of "poor quality." The Sixth Circuit does require, as a prerequisite for admission, that a tape recording "be audible and sufficiently comprehensible for the jury to consider the contents." *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). The excerpts of the recordings that the government plans to admit and play at trial have imperfect sound quality, but they are comprehensible and audible.  The government anticipates that its cooperating witness will testify that he has recently reviewed the tapes and moreover, has reviewed the transcripts of the tapes (which the government intends to use as a visual aid for

the jury at trial) and can confirm their accuracy.  Nicoletti's bald assertion that the tapes are "unintelligible" is belied by the recordings themselves.

In sum, there is no genuine authentication issue with the tape recordings, and Nicoletti's argument should be rejected.

### 4. FRE 106 Does Not Require the Jury to Endure 13 Hours of Irrelevant, Inadmissible Recordings In Order to Hear the Relevant Excerpts

Nicoletti finally argues that the "rule of completeness" requires playing the entirety of the 13 hours of recorded audio recordings between Nicoletti and Lucia. FRE 106, which codifies the doctrine of completeness, requires no such thing.

The doctrine of completeness permits a party prejudiced by the introduction of part of a "document, or a correspondence, or a conversation," to enter so much of the remainder as is necessary to explain or rebut a misleading impression caused by the "incomplete character" of that evidence. *United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982). The doctrine does not apply when completing the statement would not correct a misleading impression, or are not explanatory or relevant to the admitted portions of the statement.  *See United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (rejecting admission of statements offered under the Rule that "humanize"

13

defendant to jury, or that show his "character."). Importantly, "Rule 106 covers an order of proof problem; it is not designed to make something admissible that should be excluded." *Costner,* 684 F.2d at 373 (6th Cir.1982). Self-serving hearsay statements do not become admissible just because they are offered under the rubric of Rule 106. *Id.*

Nicoletti has had the excerpts of the tapes that the government plans to admit for some four months at this point. He does not identify any additional portions of the tapes that are necessary to rebut any allegedly misleading impressions caused by the "incomplete character" of the government's proposed excerpts. Rather, he simply states that playing the entirety of the 13 hours of tapes is necessary for context. This position is not supportable and should be rejected by the Court, for several reasons. First, the tape recordings contain, among other things, hours of irrelevancies and substantial amounts of self-serving hearsay. Pursuant to the *Costner* case, cited above, this material is inadmissible, and is not rendered admissible by Rule 106. Moreover, the burden is on the party seeking admission to demonstrate that additional portions of the statement are necessary to clarify or explain the admitted portions. *See United States v. Price,* 516 F.3d 597, 604 (7th Cir. 2008). Nicoletti demonstrates nothing of the kind. He has not explained what is unfair about the admission of the government's proposed excerpts, and what misleading

impressions would be created by their purportedly "incomplete character." He simply makes sweeping assertions. Given Nicoletti's failure to meet his burden to explain why additional portions of the tapes are necessary to "clarify or explain the admitted portions," the Court should reject his argument.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion in Limine should be denied in its entirety.

Respectfully submitted,

**MATTHEW SCHNEIDER**
United States Attorney

*s/John K. Neal*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9644
E-Mail: john.neal@usdoj.gov

*s/Craig A. Weier (P33261)*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9678
E-Mail: craig.weier@usdoj.gov

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**UNITED STATES OF AMERICA,**

                        Plaintiff,

                                    Case No. 15-cr-20382

**D-1  PAUL NICOLETTI,**                    HON. VICTORIA A. ROBERTS

                        Defendant.

_____/

## CERTIFICATE OF SERVICE

    On April 19, 2019, the undersigned filed the GOVERNMENT'S RESPONSE AND BRIEF IN OPPOSITON TO DEFENDANT'S MOTION *IN LIMINE* TO PREVENT THE USE OF GOVERNMENT WIRE TAPS OF TELEPHONE CONVERSATIONS OF DEFENDANT PAUL NICOLETTI using the Court's Electronic Filing System which automatically serves a copy to all counsel of record.

                        *s/John K. Neal*
                        Assistant United States Attorney

16