UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,        Case No: 2:15-cr-20382

-v-                                   Honorable Victoria Roberts

D-1 PAUL NICOLETTI,        Magistrate Judge Elizabeth Stafford

           Defendant.

| | |
|---|---|
| Craig Weier | Paul J. Stablein |
| United States Attorneys Office | Paul Stablein, PLLC |
| Assistant United States Attorney | Attorney for Defendant |
| 211 West Fort Street, Suite 2001 | 380 North Old Woodward Ave, Ste 320 |
| Detroit, Michigan 48226 | Birmingham, Michigan 48009 |
| (313) 226-9678 | (248) 540-1600 |
| Craig.Weier@usdoj.gov | PaulStablein@StableinLaw.com |

**MOTION FOR JUDGMENT OF ACQUITTAL**
_____

NOW COMES the Defendant, PAUL NICOLETTI, by and through his attorney, Paul Stablein, and moves this Honorable Court for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c), and in support thereof, states as follows:

1.      Mr. Nicoletti was charged by way of indictment with one count of conspiracy to commit bank fraud (18 U.S.C. §1349) and three counts of bank fraud (18 U.S.C. §1344).

2. The trial of this matter began on April 29, 2019, and continued until the jury reached its verdict on May 7, 2019. The jury found Mr. Nicoletti guilty of all of the counts in the indictment.

3. At Mr. Nicoletti's trial, the government failed to establish sufficient evidence that Mr. Nicoletti conspired to and committed bank fraud in violation of 18 U.S.C. §§ 1349 and 1344.

4. Specifically, the government failed to establish sufficient evidence that the mortgage loans at issue were obtained from "financial institutions" as defined by § 1344, but rather from one mortgage lender, Fifth Third Mortgage – MI, LLC. Fifth Third Mortgage – MI, LLC, was not federally insured at the time of the conduct complained of. The government failed to establish Mr. Nicoletti's conduct was directed at any federally insured bank, and the government failed to establish that Mr. Nicoletti obtained or sought to obtain money that was in the custody or control of a federally insured bank.

5. Sec. 1344 makes it illegal to knowingly execute a scheme to defraud a financial institution or to knowingly execute a scheme to obtain money owned by, or under the custody or control of, a financial institution by false pretenses. The indictment here alleged that Mr. Nicoletti committed the charged offenses "[b]eginning in or before May 2005, and continuing to in or about November 2005,…." During that timeframe, a "financial institution" was defined by 18 U.S.C.

§ 20 as "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act.)" 12 U.S.C. § 1813(c)(2) states the following:

> (c) DEFINITIONS RELATING TO DEPOSITORY INSTITUTIONS. –
> (2) INSURED DEPOSITORY INSTITUTION. – The term "insured depository institution" means any bank or savings association the deposits of which are insured by the Corporation pursuant to this chapter.[1]

6.  The Sixth Circuit Pattern Jury Instructions covering bank fraud dictate that the government must prove beyond a reasonable doubt, "Fourth, that the bank [financial institution] was federally insured." Sixth Cir. Pattern J. Instr., 10.03B(1)(D) (Jan. 1, 2019).

7.  The evidence presented at Mr. Nicoletti's trial failed to prove that Mr. Nicoletti conspired to defraud or defrauded a financial institution in 2005, because Fifth Third Mortgage – MI, LLC, was not a federally insured bank or savings association as required by the statute in effect at the time of the alleged offenses.

8.  Therefore, the government failed to establish an essential element of the charges set forth in the indictment, and this Honorable Court should set aside the jury's verdict and enter a judgment of acquittal in favor of Mr. Nicoletti.

---

[1] In 2009, Congress amended the definition of a financial institution to include "a mortgage lending business (as defined in section 27 of this title) or any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974." 18 U.S.C. § 20(10), eff. May 20, 2009.

9. Further argument and statements of relevant facts are set forth in Mr. Nicoletti's concurrently filed Brief in Support of Defendant's Motion for Judgment of Acquittal.

WHEREFORE, Mr. Nicoletti prays this Honorable Court for an order setting aside the jury's verdict and entering a judgment of acquittal.

Respectfully submitted,

/s/Paul Stablein
Paul J. Stablein
Paul Stablein, PLLC
Attorney for Defendant
380 North Old Woodward Ave, Ste 320
Birmingham, Michigan 48009
(248) 540-1600
PaulStablein@StableinLaw.com

DATED: June 18, 2019

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,        Case No: 2:15-cr-20382

-v-                                      Honorable Victoria Roberts

D-1 PAUL NICOLETTI,        Magistrate Judge Elizabeth Stafford

                Defendant.

| | |
|---|---|
| Craig Weier | Paul J. Stablein |
| United States Attorneys Office | Paul Stablein, PLLC |
| Assistant United States Attorney | Attorney for Defendant |
| 211 West Fort Street, Suite 2001 | 380 North Old Woodward Ave, Ste 320 |
| Detroit, Michigan 48226 | Birmingham, Michigan 48009 |
| (313) 226-9678 | (248) 540-1600 |
| Craig.Weier@usdoj.gov | PaulStablein@StableinLaw.com |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION**
**FOR JUDGMENT OF ACQUITTAL**

      Simply put, the issue in this matter is whether the government presented sufficient proof for any rational trier of fact to conclude that the bank (or financial institution) was federally insured during the timeframe alleged in the indictment. As will be demonstrated below, Fifth Third Mortgage – MI, LLC, was not federally insured in 2005, and, therefore, this Honorable Court set aside the jury's guilty

verdict and grant Mr. Nicoletti a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c).

**RELEVANT FACTS**

Mr. Nicoletti's trial counsel had moved this Honorable Court for judgment of acquittal following the close of the government's proofs pursuant to Rule 29(a), raising the issue set forth above. In response, the government relied primarily on the testimony of one witness, Albert P. Cliffel, III.

Cliffel testified that he was the corporate tax director for Fifth Third Bank, and he had been with the company for approximately 17 years. (Doc. #136, p. 3). He was responsible for all of the tax reporting for all Fifth Third entities. In 2005, Fifth Third Bank Michigan and Fifth Third Bank Ohio were separate banks that were direct subsidiaries of an intermediate holding company under the public company known as Fifth Third Bancorp (Id. at p. 5), and both were insured by the Federal Deposit Insurance Corporation. (Id. at p. 6).

As to Fifth Third Mortgage Michigan, Cliffel stated it was "essentially a wholly-owned subsidiary of Fifth Third Bank Michigan." "Fifth Third Bank Michigan owns 100 percent of Old Kent Mortgage Services, which owns 99 percent of Fifth Third Mortgage Michigan. Fifth Third Bank Michigan owns the remaining one percent of Fifth Third Mortgage Michigan." (Id. at p. 9). Cliffel further stated that when the mortgage company funded a loan, it got the money that was in the

2

custody of Fifth Third Bank. (Id. at p. 10). What Cliffel did not state was that the money to fund the loans was money actually owned by Fifth Third Bank or that Fifth Third Bank gave the money to Fifth Third Mortgage. Cliffel's statement is just as easily interpreted as Fifth Third Mortgage had an account at Fifth Third Bank and used those moneys to fund the loans. Money in a bank in the account opened by a depositor, though it may be in the custody of the bank, does not belong to the bank. It is not owned by the bank. The money is owned by the account holder. The government did not provide sufficient proof that the scheme was executed to obtain money that was "owned by, or in the custody or control of, a financial institution." 18 U.S.C. § 1344(2). In fact, on cross examination, Cliffel admitted that when Continental Title, Mr. Nicoletti's company, received the checks drawn on an account at Fifth Third Bank, "….they become the property of Continental Title…." (Id. at p. 17).

Cliffel further testified that the routing number located on the bottom of copies of two checks admitted as Government Exhibit (GX) 79 was the routing number for Fifth Third Bank Michigan, meaning, that the money came from an account at Fifth Third Bank Michigan. (Id. at p. 13). Cliffel did not say whether the account number on the checks represented an account *owned by* Fifth Third Bank Michigan, or whether the account was owned by Fifth Third Mortgage – MI, LLC. The fact that the money was drawn on an account at Fifth Third Bank is irrelevant without an

3

understanding of whose account the funds were drawn from. The government neglected to prove that important fact.[1]

**ARGUMENT**

In evaluating a defendant's claim that the evidence produced at trial was insufficient to support a conviction, this Honorable Court must determine whether "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992) (en banc). Reversal is warranted if the conviction was "not supported by substantial and competent evidence upon the record as a whole." *Beddow*, 957 F.2d at 1334 (citations omitted).

The federal bank fraud statute, 18 U.S.C. § 1344, was originally enacted as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1108(a), and in response to a Supreme Court decision, *Williams v. United States*, 458 U.S. 279 (1982), that had limited the scope of 18 U.S.C. § 1014, the statute criminalizing false statements to financial institutions. Congress enacted § 1344 "to provide an effective vehicle for the prosecution of frauds in which the victims are

---

[1] This Honorable Court should also take note of the exhibits presented in earlier motions filed by Mr. Nicoletti's trial counsel which demonstrate that the funds were being provided by Fifth Third Mortgage via an ACH debit. (Doc. #90, Exhibits 2 and 7).

4

financial institutions that are federally created, controlled or insured." S. Rep. No. 225, 98th Cong., 2d Sess. 377 (1983), reprinted in 1984 U.S. Code Cong & Admin News 3182, 3517. The federal interest Congress sought to advance was "protecting the financial integrity of *these* institutions." Id. (emphasis added).

The version of section 1344 applicable to the charges against Mr. Nicoletti provided as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises [shall be guilty of a crime].
> 18 U.S.C. § 1344.

As used in this statute, "financial institution" does not include every institution involved in providing financial services of any type. Rather, the term was statutorily defined in 18 U.S.C. § 20, which was incorporated into the bank fraud statute in 1989. At the time of the charged offenses in this case, "financial institution" did not include mortgage lenders such as Fifth Third Mortgage – MI, LLC, but did include Fifth Third Bank, because the bank's deposits were insured by the FDIC. *See* 18 U.S.C. § 20(1) (cross-referencing 12 U.S.C. § 1813(c)(2), which defined "insured depository institution"); *United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998). After the collapse of the subprime mortgage industry in the late 2000s, Congress recognized this gap in the statute. In the Fraud Enforcement and

5

Recovery Act of 2009, Congress amended 18 U.S.C. § 20 and a related portion of 18 U.S.C. § 1014, and enacted 18 U.S.C. § 27, "in order to extend Federal fraud laws to mortgage lending businesses that are not directly regulated or insured by the Federal Government." S. Rep. 111-10, 2009 U.S.C.C.A.N. 430, 432. See Pub. L. 111–21, §§ 2(a) and 2(b)(1), May 20, 2009, 123 Stat. 1617.  In so doing, Congress explicitly recognized that "mortgage lending businesses," which "were responsible for nearly half the residential mortgage market before the economic collapse," were at the time "outside the scope of traditional Federal fraud statutes." S. Rep. 111-10, 2009 U.S.C.C.A.N. 430, 432.

The two subsections of 18 U.S.C. § 1344 have separate elements that reach and prohibit separate conduct and require different forms of intent.  In *Loughrin v. United States*, 134 S. Ct. 2384 (2014), the Supreme Court held that § 1344(1) penalizes schemes to defraud the bank itself, while § 1344(2) targets schemes to obtain property held by the bank via misrepresentation to a third party—in that case, altered checks used to purchase merchandise at a Target store. *Id*. at 2389-92. Accordingly, the question presented in this case is simple: Did the government prove that Mr. Nicoletti participated in a conspiracy and scheme that was directed at a FDIC-insured bank covered by the bank fraud statute in 2005? The answer is equally plain: No, it proved no such thing.

6

As stated above, the government's only witness to shed any light on the relationship between Fifth Third Mortgage – MI, LLC, and Fifth Third Bank was Albert Cliffel. Cliffel highlighted the fact that Fifth Third Mortgage Michigan was "essentially a wholly-owned subsidiary of Fifth Third Bank Michigan." (Doc. 136, p. 9). That fact does not equate to stating that Fifth Third Bank Michigan owns the assets of Fifth Third Mortgage Michigan, a separately organized limited liability company.

In *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), the Supreme Court stated:

> A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities . . . . An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest. See 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 31 (rev. ed. 1999). A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary…. See id., § 31 at 514 ("The properties of two corporations are distinct, though the same shareholders own or control both. A holding corporation does not own the subsidiary's property").

*Id.* at 474-75 (citations omitted). *Accord Society for Savings in the City of Cleveland v. Bowers*, 349 U.S. 143, 147 (1955) ("stockholders' interests in a corporation represent a separate property interest from the corporation's ownership of its assets"); *R.I. Hospital Trust v. Doughton*, 270 U.S. 69, 81 (1926) ("[t]he owner of the shares of stock in a company is not the owner of the corporation's property");

7

*Van Allen v. The Assessors*, 70 U.S. (3 Wall.) 573, 583-84 (1865) (corporation, not its shareholders, "is the legal owner of all the property of the bank").

In the banking context, the basic structure of federal bank deposit insurance mandates a bright-line distinction between the assets of FDIC-insured entities and the assets of their subsidiaries. Responding to the bank runs that followed the 1929 stock market crash, Congress sought to restore confidence in and the stability of the banking system through the Banking Act of 1933, ch. 89, 48 Stat. 162 *et seq.*; *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 432-34 (1986). In the FDIC system, banks pay premiums into an insurance fund, 12 U.S.C. § 1817, which makes payments within statutory limits to depositors in failed insured banks. 12 U.S.C. § 1821. "Congress' focus in providing for a system of deposit insurance . . . was clearly a focus upon safeguarding the assets and 'hard earnings' that businesses and individuals have entrusted to banks." *FDIC v. Philadelphia Gear Corp.*, 476 U.S. at 435. In addition to paying premiums, banks that join the FDIC system are subject to FDIC examination, 12 U.S.C. §§ 1819-20, termination of insurance, 12 U.S.C. § 1218, liquidation, 12 U.S.C. § 1821, or a "purchase and assumption" sale to another bank. 12 U.S.C. § 1823.

Over time, banks and bank holding companies - including Fifth Third Bank - decided to conduct mortgage lending activities through subsidiaries that shielded the insured banks from the subsidiaries' riskier line of business and permitted the

8

subsidiaries to operate without the costs and myriad obligations of FDIC membership. Consequently, as Judge Posner explained in *United States v. White*, 882 F.2d 250 (7th Cir. 1989), "the federal government has no stake in the fortunes of [a bank's subsidiary]" because "[t]he primary and sole relevant purpose of requiring a bank to conduct its nonbanking business through subsidiaries is to insulate the depositors, and hence their federal insurer, the FDIC, from liabilities that may be incurred as a result of ventures riskier than banking itself." *Id*. at 253.

Applying these principles, courts have held that, under the version of 18 U.S.C. § 20 that governs this case, a bank that conducted its mortgage lending through an uninsured subsidiary waived the protections of 18 U.S.C. § 1344. In *United States v. Bennett*, the Ninth Circuit addressed a mortgage fraud scheme directed in part at Equicredit Corporation ("Equicredit"), a wholly-owned subsidiary of Bank of America ("BOA"). 621 F.3d at 1133. The trial record established that BOA was FDIC-insured, Equicredit was not, and BOA owned all of Equicredit's stock. *Id*. at 1134. A superseding indictment returned against defendant Bennett in September 2005 - that is, for conduct prior to the 2009 amendments to 18 U.S.C. § 20 - included bank fraud charges for conduct directed at Equicredit. Bennett was convicted on these counts and appealed.

Before the Ninth Circuit, the government abandoned reliance on § 1344(1) because Bennett's fraud was directed at Equicredit, an entity that was not a financial

9

institution. *Id*. at 1136. Turning to § 1344(2), the court analyzed the operative verbs and nouns of that subsection and found that none of them supported the convictions. Beginning with the possibility that Bennett obtained funds "owned by" BOA, the court applied the corporate law doctrines discussed above and found that "no rational trier of fact could have found that Bennett procured assets 'owned by' a financial institution." *Id*. at 1138. Noting that "the bank fraud statute does not make it a crime 'to devalue' a financial institution's assets or 'to affect' a financial institution," *id*., the court rejected cases decided under different statutes that had attributed subsidiaries' assets to parents and instead focused on the operate verbs of § 1344(2) - "obtain" and "owned by." *Id*. (distinguishing *United States v. Cartwright*, 632 F.2d 1290, 1292 (5th Cir. 1980) (18 U.S.C. § 657); *United States v. Bouyea,* 152 F.3d 192, 195 (2d Cir. 1998) (18 U.S.C. § 1343); *United States v. Pelullo*, 964 F.2d 193, 215-16 (3d Cir. 1992) (same)). "Because no rational trier of fact could conclude that the assets Bennett fraudulently procured from Equicredit were 'owned by' BOA, sufficient evidence does not support Bennett's conviction on that basis," the Ninth Circuit concluded. *Id*.

In *United States v. Bouchard*, 828 F.3d 116 (2d Cir. 2016), the Second Circuit followed Bennett in reversing convictions under § 1344 and 18 U.S.C. § 1014 when the loans in question were obtained from BNC Mortgage ("BNC"), an uninsured subsidiary of the now-defunct but then federally-insured Lehman Brothers. The

10

court noted that "financial institution" as set forth in § 20 "is not a loose or colloquial term, but a term of precise definition that can lead to grave criminal consequences." *Id*. at 126. Additionally, the court found that both *Loughrin* and the 2009 amendment to § 20 compelled a narrow reading of the pre-amendment statutory scheme under which the defendant was convicted:

> [W]e are mindful that § 1344(2) should not be read to "federaliz[e] frauds that are only tangentially related to the bank system," which is § 1344's core concern. *Loughrin*, 134 S. Ct. at 2392 (quotation marks omitted). For that reason, and particularly when bank subsidiaries may be engaged in activities far afield of the core functions of our federal banking system, it is important (absent legislative direction to the contrary) to distinguish subsidiaries of banks from the banks themselves. *See United States v. Bennett*, 621 F.3d [at] 1136….; *see also United States v. White*, 882 F.2d [at] 253 … (in the context of § 1014, "it would be … perilous to assume that Congress wanted to extend the statute's protection to [financial institution'] affiliates, when so far as appears there is no (or only the most attenuated) federal stake in preventing fraud against affiliates of a federally insured bank, as distinct from fraud against the bank itself").

*Id.*

After carefully examining the 2009 amendments, the court concluded that the amendment supported, rather than undermined, a narrow reading of the previous version of § 20:

> At the time of the charged conduct, all of which occurred before the 2009 congressional amendments, BNC was not a covered institution. Of course, the Government might have been able to prove that Bouchard knew that money from mortgage lenders came from banks by virtue of his knowledge of the industry. But it failed to make this argument or proffer evidence of Bouchard's extensive knowledge of the real estate and mortgage lending industry as a reason to convict him at trial.

11

*Id.* at 127.

The same analysis applies here. The government's reliance on the fact that Fifth Third Mortgage Michigan was a wholly-owned subsidiary of Fifth Third Bank Michigan does not create federal jurisdiction where none would otherwise exist. In fact, in *Loughrin,* the Court sought to avoid "a rebalancing of criminal jurisdiction [that] would follow from interpreting s 1344(2) to cover every pedestrian swindle happening to involve payment by check, but in no other way affecting financial institutions." 134 S. Ct. at 2392-93. So too must courts avoid interpreting the statute to cover every fraud directed at a bank subsidiary, no matter how far removed the subsidiary was from the banking activity covered by the operative version of § 20.

Nor can Mr. Nicoletti's convictions be sustained on the grounds that the loans in question involved assets under the "custody" or "control" of Fifth Third Bank. Black's Law Dictionary defines "custody" as "[t]he care and control of a thing or person for inspection, preservation, or security" and "control" as "the power or authority to manage, direct, or oversee." *Black's Law Dictionary* (10th ed. 2014).

In this case, the government presented only Albert Cliffel, who baldly testified that the funds used to fund the mortgages (incidentally, he was only referring to the Lucia loan and none of the other charged and uncharged loans) was "in the custody of Fifth Third Bank Michigan or Fifth Third Bank Ohio." None of his testimony established that Fifth Third Bank exercised "custody" or "control" over the mortgage

12

lenders' assets through any means other than a parent-subsidiary relationship. He did not testify how or by what means the bank exercised custody over the mortgage lender's funds. As with any depositor at any bank, the money held in his or her account is, after the deposit is made, in the custody of the bank. That deposit does not mean that the funds are now *in the custody or control* of the bank. The funds belong to and are owned by the depositor, not the bank. Had Cliffel testified with more specificity regarding the relationship between the bank and the mortgage lender, so that a rational trier of fact could conclude that the funds were actually owned or controlled by the bank, Mr. Nicoletti's argument would lack merit. The government chose not to enlighten the jury, and, therefore, the government failed to establish proof of an essential element of the offense. Mr. Nicoletti is entitled to a judgment of acquittal.

Lastly, the government failed to sufficiently prove that Mr. Nicoletti intended to defraud Fifth Third Bank as opposed to the mortgage lender. The government established only that fraudulent loan applications were submitted to Fifth Third Mortgage – MI, LLC, an entity not federally insured. This requirement, that the defendant intend to defraud a bank, finds support in the Fifth Circuit's recent decision in *United States v. Perez Ceballos*, 907 F.3d 863 (5th Cir. 2018). There, the defendant had fraudulently represented to an investor with Chase Investment Services Corporation (a non-FDIC entity) that her residence was in Mexico when in

13

fact she lived in Houston, Texas. She would not have been eligible for the account she funded had she honestly told the investor she lived in the United States. *Perez-Ceballos, supra*, at 865. After securing the account, she transferred all of her assets ($1.9 million) from one company to her savings account at Chase Bank. She then transferred the entire amount from the bank to the second investment company. The government argued that the fraudulent transfers of the funds exposed Chase Bank to a risk of loss, and, therefore, the defendant's conviction should stand. The Court disagreed, and analyzed the nature of all fraud allegations:

> "The essence of fraud is that its perpetrator has persuaded his victim to believe, beyond the dictates of reason or prudence, what is not so." *United States v. Church*, 888 F.2d 20, 24 (5th Cir. 1989). Intending "a scheme to defraud" has a broader definition that "includes fraudulent pretenses or representations intended to deceive others, in order to obtain money from the victim institution." *United States v. Barakett*, 994 F.2d 1107, 1110–11 (5th Cir. 1993) (internal quotation marks and citations omitted). Therefore, "[w]hile section 1344(1) prohibits only crimes directed at financial institutions, we have not held that the statute punishes only schemes directed solely at institutional victims. We have recognized that knowing execution of schemes causing risk of loss— rather than actual loss—to the institution, can be sufficient to support conviction." *Id.* at 1111 (internal citations omitted).
> *United States v. Perez-Ceballos*, *supra,* at 868 (5th Cir. 2018)

After looking at the factual backdrop presented at the defendant's trial, the Court found no evidence that Perez-Ceballos made any fraudulent representations to anyone at Chase Bank. She directed Chase Bank to transfer her funds to an outside investment company but made no false statement. The Court concluded that it was only speculative that she had made any false

14

statement to anyone at the bank. Therefore, the defendant's conviction was reversed.

Likewise, in the case before this Honorable Court, the government failed to establish any evidence that Mr. Nicoletti made any false statement, or knowingly conspired with anyone else to make such a false statement, to Fifth Third Bank. The loan applications were submitted to Fifth Third Mortgage Michigan. The transactions were all conducted with Fifth Third Mortgage Michigan. The loans were funded by, at least from the borrows end, Fifth Third Mortgage Michigan. At no time, like the defendant in *Perez-Ceballos*, did Mr. Nicoletti make any fraudulent representations to the bank. Without such proof, his conviction cannot stand, and on this basis as well, Mr. Nicoletti is entitled to a judgment of acquittal.

Respectfully submitted,

/s/Paul Stablein
Paul J. Stablein
Paul Stablein, PLLC
Attorney for Defendant
380 North Old Woodward Ave, Ste 320
Birmingham, Michigan 48009
(248) 540-1600
PaulStablein@StableinLaw.com

DATED:     June 18, 2019

15