UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                               Case No. 15-20382
                               Honorable Victoria A. Roberts

PAUL NICOLETTI,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION
## FOR JUDGMENT OF ACQUITTAL [ECF No.139]

**I.    INTRODUCTION**

On June 23, 2015, the United States charged Paul Nicoletti ("Nicoletti") in a four-count indictment — one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and three counts of aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344(2). On May 5, 2019, a jury convicted Nicoletti on all four counts.

Nicoletti filed this timely Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. It is fully briefed.

The court reviewed the evidence in the light most favorable to the Government. It finds there was sufficient evidence to support the jury's verdict.

The Court **DENIES** the Defendant's motion.

## II. BACKGROUND

Nicoletti participated in obtaining loans to purchase homes in Oakland County. He was a licensed attorney in the State of Michigan and President of Continental Title Insurance Agency. Nicoletti recruited unqualified straw buyers to purchase high-end residential property using the proceeds of multi-million-dollar mortgage loans from Fifth Third Bank. This fraudulent scheme and conspiracy was designed to obtain financing to purchase real estate located at 3935 Quarton Road, Bloomfield Hills, Michigan; 3941 Quarton Road, Bloomfield Hills, Michigan; and "Vacant Lone Pine Lot," Bloomfield Hills, Michigan. Nicoletti acted as a title agent; coordinated and conducted the real estate closings; prepared false HUD-1 Settlement Statements; and disbursed the proceeds of the mortgage loans.

During 6 days of trial, the government proved Nicoletti knowingly facilitated fraudulent real estate transactions. The evidence established Nicoletti submitted fraudulent loan applications to financial institutions – including Fifth Third Bank – that contained materially false information, including false identities of loan applicants, false income and assets of loan applicants, false sources of down payments, and false intentions on the part of the buyers to use the properties as principal residences. The evidence showed the loans were all funded by money in the custody of Fifth Third Bank, disbursed to Nicoletti's title company's bank account – also at Fifth Third Bank – and then distributed by Nicoletti to himself and others.

### III. STANDARD OF REVIEW

A Rule 29 motion challenges the sufficiency of the evidence to sustain a conviction. *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996). When addressing such a motion, whether made under 29(a) or (c), the trial court must consider whether,

> after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Jones*, 102 F.3d at 807. The Court must, in performing this review, "refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Price*, 258 F.3d 539, 544 (6th Cir. 2001) (*quoting United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996)). The Court can reverse a jury's verdict for insufficient evidence only if it is not supported by "'substantial and competent evidence'" on the record as a whole and must "make all reasonable inferences and credibility choices in support of the jury's verdict." *Grubbs*, 506 F.3d at 438; *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006) (quotation marks omitted). This standard is difficult to overcome; it places a heavy burden on the defendant. *United States v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000) (*citing United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

### IV. ANALYSIS

Nicoletti says the evidence was insufficient to prove both that he had the requisite criminal intent to obtain money within the custody of a financial institution and to establish that he submitted false information to financial institutions.

To support a conviction for bank fraud under 18 U.S.C. 1344(2), the government must prove that the defendant intended to: (1) obtain money in the custody or control of an insured financial institution; and (2) defraud financial institutions by "means of" false pretenses. 18 U.S.C. 1344(2).

In relevant part, the bank fraud statute imposes liability on "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice . . . to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2). "A scheme or artifice to defraud includes 'any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.'" *United States v. Brandon,* 17 F.3d 409, 424 (1st Cir. 1994). "The scheme to defraud clause requires that the defendant engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing it to actual or potential loss." *Id.*

Relying on *United States v. Banyan*, 933 F.3d 548 (6th Cir. 2019), Nicoletti argues that the Court should be persuaded to grant this motion. However, *Banyan* is distinguishable. No doubt there are factual similarities between the cases: recruitment of straw buyer purchasers, overstatement of buyer income, false intentions to use properties as permanent addresses. But, there are notable distinctions: the Government in this case did not rely solely on the lender's status as a wholly owned subsidiary to prove the requisite elements; the Government proved that Fifth Third Bank funded the loan

proceeds; and Nicoletti made false statements not only to its subsidiary mortgage company, but to Fifth Third Bank as well. These false statements were central to Nicoletti's fraudulent scheme.

### A. Evidence Showed Nicoletti Intended to Obtain Money in Custody of an Insured Financial Institution

The Government did prove that Nicoletti and co-conspirators acquired the properties at issue in the name of third parties –straw buyers – with the intent to obtain money in the custody of Fifth Third Bank by offering evidence that: Fifth Third Bank funded the loans at issue; Nicoletti was aware of such funding; and he made false statements to Fifth Third Bank. Nicoletti argues these proofs are insufficient because his actions did not deceive a federally chartered or insured financial institution, but rather a mortgage company (Fifth Third Mortgage) that is wholly owned by an FDIC-insured bank.

It is true that "the mere fact that a mortgage company is wholly owned by an FDIC insured parent bank is insufficient to show that the parent bank owned or controlled the funds, or any other assets, of its subsidiary." *See, e.g.*, *United States v. Bouchard*, 828 F.3d 116, 126 (2d Cir. 2016); *United States v. Alexander*, 679 F.3d 721, 728 (8th Cir. 2012); *United States v. Bennett*, 621 F.3d 1131, 1136 (9th Cir. 2010) (quoting *Banyan*, 933 F.3d at 556).

And, it is undisputed that "[a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets[.]" *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003); *see also Rhode Island Hosp. Tr. Co. v. Doughton,* 270 U.S. 69, 81 (1926) ("owner of the shares of stock in a company is not the owner of the corporation's

property"); *United States v. Bennett,* 621 F.3d 1131, 1136 (9th Cir. 2010) ("a parent corporation does not own the assets of its wholly owned subsidiary by virtue of that relationship alone"). However, the relationship between Fifth Third Bank Michigan and Fifth Third Mortgage Michigan is more than a passive ownership of assets– Fifth Third Bank Michigan, an FDIC-insured bank, funded all the loans based upon the fraudulent mortgage applications submitted by Nicoletti.

But, the proofs here went beyond mere reliance on ownership, and Nicoletti's reliance on *Banyan* is misplaced.

In *Banyan*, the relationship between the mortgage company and parent bank proved to be nothing more than a passive parent-subsidiary relationship. The Government presented no evidence of the source of the funds obtained by fraud; there was no evidence that the defendants obtained loans funded by federally insured banks. The Sixth Circuit held that this was insufficient to show that a fraud scheme directed at the subsidiary mortgage company, really had the intention to obtain money in the custody of the parent bank. *Banyan*, 933 F.3d at 553.

In contrast to *Banyan*, the Government here showed that Fifth Third Bank Michigan funded all the loans with money in its custody and highlighted that the proceeds were in the custody of a federally insured bank. *See United States v. Rabuffo,* 716 Fed. App'x 888, 898 (11th Cir. 2017) (unpublished, per curiam)(supporting conviction when the government presented evidence that the defendant knew that a bank "would be handling any draw requests on the loans."); *see also United States v. Chittenden,* 848 F.3d 188, 201 (4th Cir.), *vacated on other grounds,* 138 S.Ct. 447 (2017) (bank funded the loans through a line of credit to mortgage company); *United States v. Edelkind,* 467 F.3d 791,

6

797-98 (1st Cir. 2006) (bank approved the mortgage company's loans) (citing *Banyan*, 933 F.3d at 556).

Albert Cliffel, Corporate Tax Director for Fifth Third Bank, testified all loan proceeds at issue were in the custody of either Fifth Third Bank Michigan or Fifth Third Bank Ohio at the time they were released to Nicoletti's Continental Title Account. This is a far cry from the utter lack of proof in *Banyan* that the parent bank funded the loans and that defendant was aware of the funding.

Nicoletti knew that the money used to fund the loan proceeds was in the custody of a federally insured bank. The Government established Nicoletti received cashier's checks issued and drawn from "Fifth Third Bank (Eastern Michigan)" totaling $1,824,156.05. He deposited these checks into his Continental Title account. "[C]hecks standing alone are not enough for a jury to find beyond a reasonable doubt that, when [defendant] submitted fraudulent loan applications to the mortgage companies, [he] intended to obtain funding from the banks." *Banyan*, 933 F.3d at 553. However, the checks are a data point that are connected to the federally insured bank that funded the loan. *Id*. In conjunction with other evidence, these checks helped to prove that Nicoletti intended to obtain money in the custody of a secured financial institution.

It is the Court's hope that Nicoletti does not intend to intentionally mislead it by misstating the law with regard to his next argument. In overstating the Government's burden, Nicoletti contends, "18 U.S.C. § 1344(2) states in pertinent part, the scheme must be "to obtain any of the moneys . . . owned by, or under the custody **and** control of, a financial institution…The statute does not say 'custody or control' of a financial institution." Doc. 147: Defendant's Reply at 12. Nicoletti argues the Government used a conjunctive

7

reading of the statute in a status conference hearing, but the statute clearly indicates it is in the disjunctive. § 1344(2) states, in part, "to obtain any of the moneys...owned by, or under the custody *or* control of, a financial institution, by means of false or fraudulent pretenses, representations, or promise." 18 U.S.C. § 1344 (emphasis added). The Government satisfied its burden by proving that the loan proceeds were in the custody of Fifth Third Bank Michigan; it was not required to prove that the proceeds were under both its custody and control.

A rational jury could conclude beyond a reasonable doubt that Nicoletti intended to obtain money in the custody of an insured financial institution before they were released to Nicoletti's Continental Title account to fund the loans.

## B. Government Produced Sufficient Evidence Showing Nicoletti Intended to Defraud Financial Institutions "By Means Of" False Pretenses

Nicoletti argues the Government produced insufficient evidence that he intended to defraud the financial institutions "by means" of false pretenses. Nicoletti relies on specific language from *Banyan* where the Court held: "[there was] no evidence that any of the misrepresentations on the subject loan applications ever reached the ears of anyone at the parent banks." *Banyan*, 933 F.3d at 555. Nicoletti says the Government failed to show that any of the misrepresentations on the loan applications ever "reached the ears" of anyone at the parent bank. *Id.* This is unavailing. The Government provided sufficient evidence to show Nicoletti sought to obtain bank property by means of misrepresentation intended to reach the bank. 18 U.S.C. § 1344(2).

The bank fraud statute limits the provision's scope to "frauds in which a false statement will naturally reach [a federally insured] bank (or a custodian of the bank's property)." *Loughrin*, 573 U.S. at 365 n.8, 134 S.Ct. 2384.

> "Language like 'by means of' is inherently elastic: It does not mean one thing as to all fact patterns—and certainly not in all statutes, given differences in context and purpose. All we say here is that the phrase, as used in § 1344(2), is best read, for the federalism-related reasons we have given, see *supra,* at 2391 – 2393, as drawing a line at frauds that have some real connection to a federally insured bank—namely, frauds in which a false statement will naturally reach such a bank (or a custodian of the bank's property).

*Id.* Section 1344(2)'s "by means of" language is satisfied when, as here, the defendant's false statement – which reached the bank – is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control. *Id.* at 363.

The evidence established false statements central to the fraud scheme were made directly to a federally insured bank funding the loans when Nicoletti misstated: (1) the true buyers of the property; (2) income and assets of the buyers; (3) buyers intent to occupy the premises as their primary residence; and (4) buyers making sizable down payments toward the purchase of property. Nicoletti served as the title agent on the loans and submitted false HUD-1's; his company, Continental Title, then obtained loan proceeds from money in the custody of Fifth Third Bank. This was the means by which Nicoletti and his co-conspirators obtained the money.

Nicoletti argues that the mortgage fraud scheme had no connection to a federally insured bank, stating that funds flowed through Firth Third Mortgage Michigan. Nicoletti says that the mortgage company from which he obtained funds was not a "financial institution." But the Government never sought to prove – nor did it have to – that Fifth Third Mortgage was a financial institution under § 1344(2).

Unlike *Banyan*, the Government does not argue that the Fifth Third Mortgage is a financial institution. Rather, the Government says that Nicoletti made several false statements that "reached the ears" of Fifth Third Bank. *See Banyan*, 933 F.3d at 555. Nicoletti falsely induced Fifth Third Bank to issue official checks by fabricating down payments from straw buyers and listing the straw buyers as purchasers or remitters. The straw buyers did not bring any money to closing, nor did they purchase the official checks. Instead, the checks were paid from Nicoletti's Continental Title account – also at Fifth Third Bank – by the loan proceeds received from Fifth Third Bank Michigan and subsequently used to pay the straw buyers.

Nicoletti made two distinct false statements to obtain money in the bank's custody – (1) Nicoletti led Fifth Third Bank to believe that the straw buyers funded the checks and listed the buyers as purchasers or remitters of the properties; (2) Nicoletti falsely portrayed that the purchaser or remitter of the official check was the straw buyer.

In *Banyan*, the Government presented no evidence that any of the misrepresentations on the loan applications ever reached the ears of anyone at the FDIC insured bank. *See Banyan*, 933 F.3d at 555.

Nicoletti next argues that the Government produced insufficient evidence that he intended to defraud a financial institution because there was no evidence of actual loss by the entity. However, "[a]ctual or potential loss to the bank is not an element of the crime of bank fraud but merely a description of the required criminal intent." *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007) (internal quotation marks omitted).

Viewed in the light most favorable to the government, there was sufficient evidence presented for the jury to infer that Fifth Third Bank was exposed to a risk of loss from Nicoletti's conduct. Albert Cliffel, III, Corporate Tax Director of Fifth Third Bank, testified that Fifth Third Mortgage disbursed loans that were in the custody of Fifth Third Bank and almost $1.8 million was transferred from the Fifth Third Mortgage account (funded wholly by Fifth Third Bank) into accounts set up by Nicoletti and his co-conspirators.

Further, the jury could have inferred that to enable the Continental Title Agency to receive funds, Nicoletti presented the fraudulent documents that enabled him to gain access to funds fraudulently transferred from Fifth Third Bank. These inferences – reasonably drawn from this testimony – are sufficient to show that Fifth Third Bank was exposed to a risk of loss and distinguishes this case from those in which the bank is merely an instrumentality of a fraud perpetrated by means of misrepresentations to third parties.

A rational jury could conclude beyond a reasonable doubt that Nicoletti engaged in a fraudulent course of conduct designed to deceive a federally chartered or insured financial institution to extend certain loans.

### C. The Government Does Not Argue – Nor Did The Jury Find – Nicoletti Violated 18 U.S.C. §1344(1)

The Government never endeavored to prove that Nicoletti specifically "intended to 'defraud a financial institution.'" 18 U.S.C. § 1344(1). To prove fraud under § 1344(1), the Government would need to prove that Nicoletti intended to "cause[ ] a federally insured bank to transfer funds under its possession and control." *United States v. Everett*, 270

F.3d 986, 991 (6th Cir. 2001). Instead, here, the Government proved that (1) Nicoletti "intend[ed] to obtain bank property" (2) "by means of false or fraudulent pretenses, representations, or promises." The Government did not argue – and the jury did not find – that Nicoletti had specifically intended to defraud a financial institution.

### D. There Was No Material Variance Between the Indictment and Evidence Presented At Trial

Finally, Nicoletti argues there was a discrepancy between the allegations in the indictment and evidence offered at trial. Specifically, Nicoletti contends that the indictment never referenced Fifth Third Mortgage, and this failure to name the entity constitutes a prejudicial variance. The Government says there was no prejudicial variance between the facts alleged in the indictment and evidence presented at trial and – even if there were a variance – it was not prejudicial. Nicoletti's allegations are without merit.

A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Prince,* 214 F.3d 740, 757 (6th Cir.2000). A defendant's substantial rights "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *United States v. Barrow,* 118 F.3d 482, 488–89 (6th Cir.1997). "A variance is not reversible error unless the defendant demonstrates prejudice." *United States v. Nance*, 481 F.3d 882, 886 (6th Cir. 2007). "To obtain relief under that standard, a defendant must establish '(1) error, (2) that is plain, and (3) that affects substantial rights.'" *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Mize*, 814 F.3d 401, 408 (6th Cir. 2016)).

12

Nicoletti's rights were safeguarded; he knew precisely the nature of the charges and the evidence the Government intended to use to support those charges. The court noted the indictment "could have been more artfully drafted to refer specifically to the lending institution," but it was "sufficient for the purposes of the bank fraud statute." (Doc. 97: Order Denying Defendant's Motion to Dismiss at 4).

Assuming there was variance, Nicoletti did not suffer prejudice. A variance is not *per se* prejudicial and will not always mandate a reversal. *United States v. Budd,* 496 F.3d 517, 522 (6th Cir.2007). Nicoletti was aware of the evidence offered against him and was not "taken by surprise." Further, the Court properly instructed the jury regarding the elements necessary to convict Nicoletti of bank fraud under § 1344(2).

There was sufficient circumstantial evidence from which a reasonable jury could conclude that the trial evidence substantially matched the allegations in the Indictment.

## V. CONCLUSION

Viewing the evidence in the light most favorable to the Government, the Court holds that the jury acted rationally and reasonably when it convicted Defendant on both counts against him. *See Jackson,* 443 U.S. at 319. Defendant's Motion for Judgment of Acquittal pursuant to Fed.R.Crim.P. 29 is **DENIED**.

**IT IS ORDERED**.

                                                s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: October 9, 2019