UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,           Case No: 2:15-cr-20382
-v-                                                Hon. Victoria Roberts

D-1 PAUL NICOLETTI,

           Defendant.

| Craig Weier | Paul J. Stablein |
|---|---|
| United States Attorneys Office | Paul Stablein, PLLC |
| Assistant United States Attorney | Attorney for Defendant |
| 211 West Fort Street, Suite 2001 | 380 North Old Woodward Ave |
| Detroit, Michigan 48226 | Suite 320 |
| (313) 226-9678 | Birmingham, Michigan 48009 |
| Craig.Weier@usdoj.gov | (248) 540-1600 |
| | PaulStablein@StableinLaw.com |

**BRIEF IN SUPPORT OF THE DEFENDANT'S
REPLY TO THE GOVERNMENT'S
BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR BOND PENDING APPEAL [R. 181]**

The Government argues in its response, in part, that there is no "clear and convincing evidence that he is not a danger to the community." (Doc. #181, Page ID 3078-9). The Government's argument is 180 degrees contrary to the position it took earlier in this matter when Mr. Nicoletti sought the Government's concurrence, while he was on bond, to allow him to fish with a bow and arrow. On December 21,

2017, the Government stipulated to the following: "He (Mr. Nicoletti) is not a danger to society nor he is (sic) a threat to public safety." (Doc. #73, Page ID 627). Other than the fact that Mr. Nicoletti has vigorously defended this matter and exercised his right to a trial, nothing has changed. Mr. Nicoletti has demonstrated model behavior while on pretrial release for the five years this matter has been pending, and the Government's current statement that this fact does not demonstrate "clear and convincing proof that he would not violate the law while his appeal is pending" (Doc. #181, Page ID 3079) is without merit. The 2017 order, to which the Government stipulated, and his actual conduct while on pretrial release, are *the best* predictors of his future conduct if given the opportunity to remain on bond while his appeal is pending.

Moreover, his current employment also demonstrates the point: as of 2018, Mr. Nicoletti works as a driver of an "Authorized Emergency Vehicle" as the term is defined by the State of Michigan and is entitled to the same protections afforded other first responders pursuant to the Michigan Motor Vehicle Code. MCL 257.2(1)(c) and MCL 257.653a. Clearly, Mr. Nicoletti has established that he is not a threat to society.

The Government's argument that Mr. Nicoletti will not prevail on appeal simply reiterates the arguments the Government has been making throughout this litigation. The Government admitted that its legal theory was altered shortly before

trial based upon the *Banyan*[3] case, when it stated, "But *Banyan* is easily distinguishable, in part because the government was aware it was pending before trial and presented its case to avoid the issues it posed." (Doc. #181, Page ID 3055). The Court of Appeals decided *Banyan* in 2019, four years after the Indictment in the present case. Until *Banyan* was decided, the Government proceeded on the false premise, as indicated in the wording of the indictment, that Fifth Third Bank was the lender and hence jurisdiction existed pursuant to 18 U.S.C. § 1344(1). It is now clear that Fifth Third Bank was not the lender, nor did Fifth Third Bank provide the loan funding as required in *Banyan*. In many ways, this factual distinction is where the rubber meets the road in this case.

The Government argues that, unlike the prosecution of Banyan, it did not rely on the "wholly-owned subsidiary" status of the lender. However, despite acknowledging that the wholly owned subsidiary argument was "nearly frivolous" as the *Banyan* court stated at 552, this position is belied by the fact that the Government's questions on direct examination included the following: "Q; So by virtue of Fifth Third Bank Michigan's ownership of 100 percent of Old Kent and one percent of Fifth Third Mortgage Michigan, is it fair to say that *Fifth Third Bank Michigan owned Fifth Third Mortgage Michigan, essentially, in entirety*? A: Yes." (Doc. #136, Page ID 1293-4, emphasis supplied). Further, in order to gloss over the

---

[3] *United States v Banyan*, 933 F. 3d 548 (6th Cir. 2019)

3

factual dispute, the Government then asked Cliffel, "Did Fifth Third Mortgage Michigan use accounts of Fifth Third Bank Michigan and Fifth Third Bank Ohio to fund the loan? A: They did." Who funded the loan according to the Government? Fifth Third Mortgage Michigan did. However, to support the "custody or control" requirement of subsection 2, the Government now argues in its brief that Cliffel testified "all loan proceeds at issue were in the custody of either Fifth Third Bank Michigan or Fifth Third Bank Ohio when the proceeds were released to Continental Title." (Doc. #181, Page ID 3059). Cliffel did not testify that the proceeds were bank property. Neither did the Government establish that the accounts from which the proceeds were acquired were accounts owned by, or in the custody of, Fifth Third Bank, or were rather, accounts owned and controlled by Fifth Third Mortgage and simply located at Fifth Third Bank.

    The Government never clarified this important factual distinction, yet it could have done so easily. The Government submitted the cashier's checks drawn on the bank, containing the appropriate routing numbers, but never presented records to show from whose account the funds were purportedly drawn – whether Fifth Third Mortgage or Fifth Third Bank. The Government did not establish the point, other than to highlight one statement from one witness that was capable of two different meanings. No other evidence existed to establish this most important jurisdictional

point. Mr. Nicoletti has raised a substantial question for his appeal and this Honorable Court should grant his request for bond pending appeal.

In its brief, the Government states, "Nicoletti served as the title agent on these loans. He prepared and submitted false HUD-1's to *Fifth Third Mortgage, Michigan*, falsely showing sizable down payments by straw buyers, which, as title agent, he was charged with collecting at the closings." (Doc. #181, Page ID 3065, emphasis supplied). At no time during the trial did the Government establish that Mr. Nicoletti communicated with anyone at the bank as opposed to the lender. As the Court in Banyan noted, "And the government again presented no evidence that any of the misrepresentations on the subject loan applications ever reached the ears of anyone at the parent banks." *Banyan, supra*, at 555. Here, the Government makes an attempt to establish a misrepresentation to the bank, though its brief highlights the gaping hole in its proofs. "Thus, to obtain the official checks, *someone told the issuing bank officer* to list the straw buyers' names as the purchasers of the checks, a lie to the bank to obtain official checks to document the false narrative of the scheme that the 'buyers' made substantial down payments." (Doc. #181, Page ID 3067, emphasis supplied). Even ignoring how vague that statement is, what the buyers are bringing to the closing is in the HUD-1 which is sent to *the lender*, not the bank. The Government presented no evidence that any member of the conspiracy, let alone Mr. Nicoletti, made any false statement to the bank.

5

Furthermore, the checks, regardless of who obtained them and how, cannot form the basis for a fraud perpetrated against a bank. Based on that legality, the United States Supreme Court reversed the defendant's conviction of two counts of violating 18 U.S.C. § 1014[4] in *Williams v. United States*, 458 U.S. 279, 102 S. Ct. 3088, 73 L. Ed. 2d 767 (1982). Williams was charged with committing a check kiting scheme against various banks. In reversing the convictions, the Court stated:

> [T]echnically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false." Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts.
> *Id.* at 284.

Similarly, the Government here concedes that the no false statements were communicated to the bank and relies only on the words imprinted on the checks. (Doc. #181, Page ID 3065, n. 3). However, the checks contain no false statement that is communicated to the bank. They are simply drafts directing the drawee bank to pay the indicated amount to the bearer. *See e.g., United States v. Rodriguez*, 140 F.3d 163 (2d Cir. 1998) (Defendant's act of presenting checks payable to defendant to bank for deposit and payment was not deceptive course of conduct as to bank and thus did not support bank fraud conviction, even if defendant knew checks had been

---

[4] 18 U.S.C. § 1014 states in pertinent part, "Whoever knowingly makes any false statement or report,…for the purpose of influencing in any way the action of …any institution the accounts of which are insured by the Federal Deposit Insurance Corporation," shall be fined or imprisoned.

issued without account holder's authorization.) Even if one could conclude that the checks imply some materially false statement (which they do not), it was never communicated to the bank, only the lender, via the HUD-1 closing statement.

The Government argues that the funding of the loan is critical. "The *Banyan* court underscored that the government offered 'no evidence, for example, that either of the parent banks funded the loans and that the defendants were aware of such funding.' *Banyan* at 553." (Doc. #181, Page ID 3058). The Government's determination that the bank funded the loans is not born out by the evidence. The Funding Notification Sheets, which were attached to Mr. Nicoletti's previously filed Motion to Dismiss (attached hereto as **Exhibit A** and previously submitted with Doc. #90, Exhibits 2 and 7), clearly show that Fifth Third Mortgage Company funded each of the loans in the present case. In addition, attached hereto as **Exhibit B**, are the closing instructions for each of the loans in question here.[5] Each of them states the following: "The following requirements must be satisfied prior to the disbursement of loan proceeds. Any deviations from the requirements must be specifically approved by the Lender in writing prior to disbursement." If the bank were disbursing the funds, why indicate that the lender is responsible for doing so,

---

[5] The closing instructions were also attached as exhibits to Mr. Nicoletti's previous motion (Doc. #90).

provided the additional conditions are met at the time of closing? The lender is disbursing the funds, not the bank.

The Government's Response also identifies the actors as being "a corrupted loan officer from Fifth Third Mortgage Michigan, a subsidiary of Fifth Third Bank Michigan." (Doc. #181, Page ID 3064). The Government again wishes to highlight the fact that Fifth Third Mortgage Michigan is a wholly-owned subsidiary of Fifth Third Bank – while conceding that the fact is frivolous on this issue. As the Government states its theory of the case – "He (Mr. Nicoletti) prepared and submitted false HUD-1's to Fifth Third Mortgage, Michigan, falsely showing sizable down payments by the straw buyers…." (Doc. #181, Page ID 3065). The evidence did establish that HUD-1's containing false information were prepared, but the misrepresentations were communicated only to the lender. The Government's statement that "Nicoletti fabricated the down payments by getting Fifth Third Bank Michigan to issue official checks…" (Id.), is clearly not supported by the evidence presented at Mr. Nicoletti's trial.

This Honorable Court should conclude the issues presented at least raise a close question and grant Mr. Nicoletti a bond pending his appeal.

                              Respectfully submitted,

                              /s/Paul Stablein
                              Paul J. Stablein
                              Paul Stablein, PLLC
DATED:     May 11, 2020     Attorney for Mr. Nicoletti