UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                        Case No. 15-20382
                                        Honorable Victoria A. Roberts

PAUL NICOLETTI,

    Defendant.
_____/

**<u>ORDER (1) DENYING DEFENDANT'S MOTION FOR BOND PENDING APPEAL [ECF No.172] AND DENYING MOTION TO AMEND/CORRECT RESTITUTION [ECF No. 174]</u>**

## I.    INTRODUCTION

On June 23, 2015, the United States charged Paul Nicoletti ("Nicoletti") in a four-count indictment — one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and three counts of aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344(2). On May 5, 2019, a jury convicted Nicoletti on all four counts.

Nicoletti filed a Motion for Bond Pending Appeal pursuant to 18 U.S.C. §3143(b) and a Motion to Amend/Correct Restitution. It is fully briefed.

A rational jury found—based on Nicoletti's experience in the real estate industry and with Fifth Third Bank in particular, as well as his intimate

1

involvement in the fraudulent scheme—that he knew that the funds for the loans originated from Fifth Third Michigan or Ohio.

Nicoletti fails to raise a substantial question of law and the Court **DENIES** Nicoletti's motions.

## II. BACKGROUND

Nicoletti participated in obtaining loans to purchase homes in Oakland County. He was a licensed attorney in the State of Michigan and President of Continental Title Insurance Agency. Nicoletti recruited unqualified straw buyers to purchase high-end residential property using the proceeds of multi-million-dollar mortgage loans from Fifth Third Bank. This fraudulent scheme and conspiracy were designed to obtain financing to purchase real estate located at 3935 Quarton Road, Bloomfield Hills, Michigan; 3941 Quarton Road, Bloomfield Hills, Michigan; and "Vacant Lone Pine Lot," Bloomfield Hills, Michigan. Nicoletti acted as title agent; coordinated and conducted the real estate closings; prepared false HUD-1 Settlement Statements; and disbursed proceeds of the mortgage loans.

During six days of trial, the Government proved Nicoletti knowingly facilitated fraudulent real estate transactions. The evidence established Nicoletti submitted fraudulent loan applications to financial institutions –

including Fifth Third Bank – that contained materially false information, including false identities of loan applicants, false income and assets of loan applicants, false sources of down payments, and false intentions on the part of the buyers to use the properties as principal residences. The evidence showed the loans were all funded by money in the custody of Fifth Third Bank, disbursed to Nicoletti's title company's bank account – also at Fifth Third Bank – and then distributed by Nicoletti to himself and others.

### III.  STANDARD OF REVIEW

There is a presumption of detention for a defendant who has been found guilty, sentenced to a term in prison, and who has filed an appeal. 18 U.S.C. § 3143(b)(1); *see also United States v. Vance,* 851 F.2d 166, 168 (6th Cir. 1988).

Before releasing a defendant on bond pending appeal, a district court is required to make two findings. *United States v. Pollard,* 778 F.2d 1177, 1181 (6th Cir. 1985). First, the court must find by clear and convincing evidence that the convicted person will not flee or pose a danger to the community. 18 U.S.C. § 3143(b)(1)(A). Second, the court must find that the appeal is not to delay, and that it raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence without a term in prison, or a

sentence reduction to a term in prison less than the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B).

## IV. ANALYSIS

Nicoletti challenges the Court's subject matter jurisdiction. He then says the evidence was insufficient to prove that he had the requisite criminal intent to obtain money within the custody of a financial institution and to establish that he submitted false information to financial institutions.

Relying on *United States v. Banyan*, 933 F.3d 548 (6th Cir. 2019), Nicoletti argues the Court should be persuaded to grant this motion. However, *Banyan* is distinguishable. There are factual similarities between the cases: recruitment of straw buyer purchasers, overstatement of buyer income, false intentions to use properties as permanent addresses. But, there are notable distinctions: the Government in this case did not rely solely on the lender's status as a wholly owned subsidiary to prove the requisite elements; the Government proved that Fifth Third Bank funded the loan proceeds; and Nicoletti made false statements – not only to its subsidiary mortgage company – but to Fifth Third Bank as well. These false statements were central to Nicoletti's fraudulent scheme.

### A. Nicoletti's Challenge of Subject Matter Jurisdiction Is Misguided

Nicoletti contends that his conviction should be reversed because the government failed to prove beyond a reasonable doubt that Fifth Third Bank, a federally insured institution, was the victim of fraud. Nicoletti argues there is no federal jurisdiction absent proof that Fifth Third Bank was defrauded.

To support a conviction for bank fraud under 18 U.S.C. 1344(2), the Government must prove that Nicoletti intended to: (1) obtain money in the custody or control of an insured financial institution; and (2) defraud financial institutions by "means of" false pretenses. 18 U.S.C. 1344(2).

In relevant part, the bank fraud statute imposes liability on "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice . . . to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2). "A scheme or artifice to defraud includes 'any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.'" *United States v. Brandon*, 17 F.3d 409, 424 (1st Cir. 1994). "The scheme to defraud clause requires that the defendant

5

engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing it to actual or potential loss." *Id.* Where the Government fails to sufficiently prove the FDIC-insured status of the victim bank, this court has overturned bank fraud convictions for lack of jurisdiction. *See, e.g., Davis*, 735 F.3d at 199 (collecting cases).

Whether Fifth Third Bank was the victim of bank fraud goes to the merits of his appeal, not to jurisdiction. Courts generally wrestle with § 1344 jurisdiction when defendants are convicted of defrauding a non-FDIC insured institution. *United States v. Edelkind*, 467 F.3d 791, 797–98 (1st Cir. 2006) (upholding jurisdiction where the direct victim was not FDIC insured after finding that Lehman Brothers, an FDIC-insured institution, was also victimized by the defendant's fraud). *United States v. Davis*, 735 F.3d 194, 200-01 (no jurisdiction found where jury convicted defendant of defrauding American Express Company, which lacked FDIC-insured status).

Here, the FDIC-insured status of Fifth Third Bank is established by the record. Both the indictment and jury instructions indicate that the Government charged Nicoletti with defrauding Fifth Third Bank, an FDIC-insured institution. The jury verdict confirms the jury convicted Nicoletti of

defrauding Fifth Third Bank, not Fifth Third Mortgage. Because the alleged victim bank is FDIC insured, the Court has subject matter jurisdiction.

### B. There Was No Material Variance Between the Indictment and Evidence Presented At Trial

Nicoletti argues there was a discrepancy between the allegations in the indictment and evidence offered at trial and that variance is a close question on appeal. Specifically, Nicoletti contends that the indictment never referenced Fifth Third Mortgage, and this failure to name the entity constitutes a prejudicial variance. The Government says there was no prejudicial variance between the facts alleged in the indictment and evidence presented at trial and – even if there was – it was not prejudicial. Nicoletti's allegations are without merit.

A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Prince,* 214 F.3d 740, 757 (6th Cir. 2000). A defendant's substantial rights "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *United States v. Barrow,* 118 F.3d 482, 488–89 (6th Cir.1997). "A variance is not reversible error unless the defendant

7

demonstrates prejudice." *United States v. Nance*, 481 F.3d 882, 886 (6th Cir. 2007). "To obtain relief under that standard, a defendant must establish '(1) error, (2) that is plain, and (3) that affects substantial rights.'" *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Mize*, 814 F.3d 401, 408 (6th Cir. 2016)).

There is no material variance between the facts alleged in the indictment and the evidence presented at trial. Nicoletti's knew precisely the nature of the charges and the evidence the Government intended to use to support those charges.

Nicoletti says that the failure to include Fifth Third Mortgage Michigan in the indictment created a material variance. The indictment alleges a violation of § 1344(1) and § 1344(2). However, prior to trial, the Government advised Nicoletti and the Court that it intended only to go forward on the violation of §1344(2). For a violation of § 1344(2), it is not necessary for the Government to identity the lender. Rather, the Government must prove that Nicoletti intended to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises. §1344(2).

Although the Court noted the indictment "could have been more artfully drafted to refer specifically to the lending institution," it was "sufficient for the purposes of the bank fraud statute." [ECF No. 97]. The failure to note the Fifth Third corporate entity lending the funds was immaterial to the charge.

Even assuming there was a variance, Nicoletti did not suffer prejudice. A variance is not *per se* prejudicial and will not always mandate a reversal. *United States v. Budd,* 496 F.3d 517, 522 (6th Cir. 2007). Nicoletti was aware of the evidence offered against him and was not "taken by surprise." Further, the Court properly instructed the jury regarding the elements necessary to convict Nicoletti of bank fraud under § 1344(2).

There was sufficient circumstantial evidence from which a reasonable jury did and could conclude that the trial evidence substantially matched the allegations in the Indictment. This is not a close question.

### C. Nicoletti Poses No Danger To the Community

Nicoletti says that he is not likely to flee, nor does he pose a danger to the community because he has remained on an unsecured bond since DATE and appeared as directed for all Court ordered hearings. The Government argues that Nicoletti is a danger to the community.

The Government's assertions are contrary to its prior representations to the Court. Specifically, the Government noted "[Nicoletti] is not a danger to society nor he is (sic) a threat to public safety." [ECF No. 73, PageID.627]. Further, in March 2020, the Government consented to an extension for Nicoletti to voluntarily surrender. [ECF No. 176, PageID.2839]. Most recently, on June 2, 2020, the Government consented to another extension. [ECF No. 183, PageID.3145].

The Government could not possibly believe that Nicoletti poses a danger when it consented to multiple extensions for Nicoletti to voluntarily surrender. The Court finds Nicoletti does not present a danger to the safety to persons or the community.

### D. Government Produced Sufficient Evidence Showing Nicoletti Intended to Defraud A Financial Institution

Nicoletti argues he raises a substantial question of fact concerning whether his conviction for bank fraud was proper in light of the Sixth Circuit's ruling in *Banyan*. This argument is unavailing.

Section 1344 provides that a defendant may be found guilty of bank fraud if he:

knowingly executes, or attempts to execute, a scheme or artifice—

>(1) to defraud a financial institution; or
>
>(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

To obtain a conviction under § 1344(2), the Government needed to demonstrate that Nicoletti knowingly "deceiv[ed] a non-bank custodian into giving up bank property that it holds." *Loughrin*, 573 U.S. at 357.

### a. Nicoletti Obtained Property in the Custody or Control of an FDIC-Insured Institution

Nicoletti first argues that he did not obtain money within the custody or control because the Government failed to present proof that his actions deceived a federally chartered or insured financial institution; instead, he says he obtained money in the custody or control of a mortgage company (Fifth Third Mortgage) that is wholly owned by an FDIC-insured bank.

The Government says there is no substantial question of law because it proved that Nicoletti intended to obtain money in the custody or control of Fifth Third Bank to acquire the properties at issue in the names of third parties; Nicoletti was aware of such funding; and he made false statements to Fifth Third Bank.

The Court discussed the stark differences between Nicoletti and *Banyan's* case in denying his motion for judgment of acquittal. The Court stated:

11

"An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets[.]" *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003); *see also Rhode Island Hosp. Tr. Co. v. Doughton,* 270 U.S. 69, 81 (1926) ("owner of the shares of stock in a company is not the owner of the corporation's property"); *United States v. Bennett,* 621 F.3d 1131, 1136 (9th Cir. 2010) ("a parent corporation does not own the assets of its wholly owned subsidiary by virtue of that relationship alone").

However, the relationship between Fifth Third Bank Michigan and Fifth Third Mortgage Michigan is more than a passive ownership of assets– Fifth Third Bank Michigan, an FDIC-insured bank, funded all the loans based upon the fraudulent mortgage applications submitted by Nicoletti. The proofs here went beyond mere reliance on ownership, and Nicoletti's reliance on *Banyan* is misplaced.

In *Banyan*, the relationship between the mortgage company and parent bank proved to be nothing more than a passive parent-subsidiary relationship. The Government presented no evidence of the source of the funds obtained by fraud; there was no evidence that the defendants obtained loans funded by federally insured banks. The Sixth Circuit held that this was insufficient to show that a fraud scheme directed at the subsidiary mortgage company, really had the intention to obtain money in the custody of the parent bank. *Banyan*, 933 F.3d at 553.

In contrast to *Banyan*, the Government proved that Fifth Third Bank Michigan funded all the loans with money in its custody and highlighted that the proceeds were in the custody of a federally insured bank. *See United States v. Rabuffo,* 716 Fed. App'x 888, 898 (11th Cir. 2017) (unpublished, per curiam)(supporting conviction when the government presented evidence that the defendant knew that a bank "would be handling any draw requests on the loans."); *see also United States v. Chittenden,* 848 F.3d 188, 201 (4th Cir.), *vacated on other grounds,* 138 S.Ct. 447 (2017) (bank funded the loans through a line of credit to mortgage company); *United States v. Edelkind,* 467 F.3d 791, 797-98 (1st Cir. 2006) (bank approved the mortgage company's loans) (citing *Banyan*, 933 F.3d at 556).

> Albert Cliffel, Corporate Tax Director for Fifth Third Bank, testified all loan proceeds at issue were in the custody of either Fifth Third Bank Michigan or Fifth Third Bank Ohio at the time they were released to Nicoletti's Continental Title Account. This is a far cry from the utter lack of proof in *Banyan* that the parent bank funded the loans and that defendant was aware of the funding.
>
> Nicoletti knew that the money used to fund the loan proceeds was in the custody of a federally insured bank. The Government established Nicoletti received cashier's checks issued and drawn from "Fifth Third Bank (Eastern Michigan)" totaling $1,824,156.05. He deposited these checks into his Continental Title account. "[C]hecks standing alone are not enough for a jury to find beyond a reasonable doubt that, when [defendant] submitted fraudulent loan applications to the mortgage companies, [he] intended to obtain funding from the banks." *Banyan*, 933 F.3d at 553. However, the checks are a data point that are connected to the federally insured bank that funded the loan. *Id.* In conjunction with other evidence, these checks helped to prove that Nicoletti intended to obtain money in the custody of a secured financial institution.

Again, Nicoletti fails to address any of the disparities the Court addressed between his case and *Banyan*. He merely presents the same arguments.

Further, Nicoletti's experience in the real estate industry supports that he knew that the funds for the loans originated from Fifth Third Bank. This experience and extensive background in the real estate industry includes Nicoletti acting as a title agent, coordinating and conducting real estate closings, and owning a licensed mortgage company – Continental Title.

The Government produced evidence of Nicoletti's involvement in this fraudulent scheme. Nicoletti acted as title agent, was closely involved in the

13

closings and purported sales, and prepared the closing statements. He prepared the HUD-1 forms and disbursed the proceeds of the loan. These were not arms-length transactions. Nicoletti and co-defendants engaged in a scheme to defraud by recruiting and paying straw purchasers. Nicoletti prepared false forms that identified straw buyers as purchasers. Nicoletti also made payments to these stray buyers. Nicoletti fails to meaningfully address his role in a scheme to defraud a federally insured institution.

Taken together, Nicoletti's extensive expertise in the real estate and mortgage lending industry and the fact that Fifth Third Bank funded the loans, as well as Nicoletti's participation in the fraudulent scheme, support that he knew the funding originated from Fifth Third Bank.

### b. Nicoletti Obtained Bank Property "By Means Of" False Statements

Nicoletti argues the Government produced insufficient evidence that he intended to defraud the financial institutions "by means" of false pretenses. The Government says the evidence established Nicoletti obtained bank property "by means of" false statements.

The bank fraud statute limits the provision's scope to "frauds in which a false statement will naturally reach [a federally insured] bank (or a custodian of the bank's property)." *Loughrin*, 573 U.S. at 365 n.8.

> "Language like 'by means of' is inherently elastic: It does not mean one thing as to all fact patterns—and certainly not in all statutes, given differences in context and purpose. All we say here is that the phrase, as used in § 1344(2), is best read, for the federalism-related reasons we have given, see *supra,* at 2391 – 2393, as drawing a line at frauds that have some real connection to a federally insured bank—namely, frauds in which a false statement will naturally reach such a bank (or a custodian of the bank's property).

*Id*. Section 1344(2)'s "by means of" language is satisfied when, as here, Nicoletti's false statement – which reached the bank – is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control. *Id.* at 363.

The Court previously discussed Nicoletti's scheme in obtaining bank property "by means of" false statements:

> Nicoletti made false statements directly to the bank to obtain money in its custody when he misstated: (1) the true buyers of the property; (2) income and assets of the buyers; (3) buyers intent to occupy the premises as their primary residence; and (4) buyers making sizable down payments toward the purchase of property. Nicoletti served as the title agent on the loans and submitted false HUD-1's; his company, Continental Title, then obtained loan proceeds from money in the custody of Fifth Third Bank. This was the means by which Nicoletti and his co-conspirators obtained the money.
>
> Again, Nicoletti argues that the mortgage fraud scheme had no connection to a federally insured bank, stating that funds flowed through Firth Third Mortgage Michigan. Nicoletti says that the mortgage company from which he obtained funds was not a "financial institution." But the Government never sought to prove

15

– nor did it have to – that Fifth Third Mortgage was a financial institution under § 1344(2).

Unlike *Banyan*, the Government does not argue that the Fifth Third Mortgage is a financial institution. Rather, the Government says that Nicoletti made several false statements that "reached the ears" of Fifth Third Bank. *See Banyan*, 933 F.3d at 555. Nicoletti falsely induced Fifth Third Bank to issue official checks by fabricating down payments from straw buyers and listing the straw buyers as purchasers or remitters. The straw buyers did not bring any money to closing, nor did they purchase the official checks. Instead, the checks were paid from Nicoletti's Continental Title account – also at Fifth Third Bank – by the loan proceeds received from Fifth Third Bank Michigan and subsequently used to pay the straw buyers.

Nicoletti relies on *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991) to argue that the mere act of depositing a check does not constitute bank fraud. However, Nicoletti neglects to mention that the money was only able to reach his Continental Title account after he made two distinct false statements to obtain money in Fifth Third Bank's custody – (1) Nicoletti led Fifth Third Bank to believe the straw buyers funded the checks and listed the buyers as purchasers or remitters of the properties; (2) Nicoletti falsely portrayed the purchaser or remitter of the official check was the straw buyer.

He then cites the testimony of Albert Cliffel, III, Corporate Tax Director of Fifth Third Bank, to conclude that the checks were in the custody of Continental Title, not Fifth Third Bank. However, Cliffel testified that Fifth Third Mortgage disbursed loans that were in the custody of Fifth Third Bank

16

and almost $1.8 million was transferred from the Fifth Third Mortgage account (funded wholly by Fifth Third Bank) into accounts set up by Nicoletti and his co-conspirators. Nicoletti's reliance on Cliffel's testimony disregards that Nicoletti presented the fraudulent documents that enabled him to gain access to funds fraudulently transferred from Fifth Third Bank.

Finally, Nicoletti relies on *United States v. Perez-Ceballos*, 907 F.3d 863, 868 (5th Cir. 2018). In *Perez*-Ceballos, a jury found the defendant guilty of bank fraud under 18 U.S.C. § 1344(1). *Id.* The Fifth Circuit determined that the defendant did not make any fraudulent statements to Chase Bank. *Id.* Similarly, in *Banyan*, the Government presented no evidence that any of the misrepresentations on the loan applications ever reached the ears of anyone at the FDIC insured bank. *See Banyan*, 933 F.3d at 555.

However, unlike *Banyan* and *Perez-Ceballos* – and disregarding the fact that a jury convicted the defendant in *Perez-Ceballos* of bank fraud under §1344(1), not §1344(2) – the Government established that Nicoletti made false statements to Fifth Third Bank.

The defendant in *Loughrin* violated § 1344(2) "because he made false statements, in the form of a forged and altered checks, that a merchant would, in the ordinary course of business, forward to a bank for payment."

17

573 U.S. at 366. Similarly, Nicoletti's fraudulent misrepresentations were "the mechanism naturally inducing a ... custodian of bank property ... to part with money in its control." *Id.* at 363.

### E. Nicoletti's Challenge to the Restitution Amount is Without Merit

Nicoletti says the amount of restitution owed should be decreased because no loan documents for one particular loan were produced during trial. No witness testified concerning that loan. The Government alleges that the restitution order does not raise a substantial question of law.

The Government did prove that Nicoletti participated in the closing of this particular loan. The Government never attempted to conceal this information from Nicoletti. He had the FBI 302 Forms pertaining to this transaction. Most importantly, Nicoletti agreed that the total amount of fraudulent transactions he was involved in equated to $8,442,930 – prior to Fifth Third Bank's recoveries from foreclosures – and this amount included the particular loan he now challenges. [ECF No. 179, PageID.2885].

Nicoletti's request to amend restitution is without merit.

### V. CONCLUSION

Nicoletti fails to raise a substantial question of law or fact that would likely result in a reversal, new trial, or reduced sentence. 18 U.S.C. § 3143(b)(1).

Due to the ongoing global pandemic, the date on which Nicoletti must voluntarily surrender to the institution designated by the Bureau of Prisons for service of his custodial sentence is extended to January 1, 2021, or as soon thereafter as the Bureau of Prisons orders.

Defendant's Motion for Bond Pending Appeal is **DENIED**. Defendant's Motion to Amend/Correct Restitution is **DENIED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts
United States District Judge

Dated: June 3, 2020