**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 2:15CR20382
                                            Hon. Victoria A. Roberts

v

PAUL NICOLETTI,

        Defendant
_____/

**MOTION AND BRIEF FOR RECONSIDERATION OF**
**THE ORDER GRANTING DEFENDANT'S**
**MOTION FOR EMERGENCY RELIEF (ECF No. 213)**
**AND RESPONSE TO MOTION FOR ORDER**
**TO SHOW CAUSE (ECF. 215)**

On April 27, 2021, Paul Nicoletti filed a motion requesting "emergency" relief from his obligations to pay the previously ordered restitution. (ECF No. 210, PageID 3428-3429). On April 30, 2021, before the United States had an opportunity to respond, this Court entered an order granting Nicoletti's motion for emergency relief. (ECF No. 213, PageID 3433). Subsequently, on May 6, 2021, Nicoletti file his motion for an order to show cause why the U.S. Attorney should not be held in contempt. (ECF No. 215, PageID 3444-3446). The court held a telephonic status conference on May 10, 2021. At the conclusion of the conference, the Court directed the United States to file a combined Motion for

Reconsideration and Response to the Motion for Order to Show Cause. This is that motion and response.

Nicoletti's original request for relief is based upon an incorrect understanding of his obligation to pay restitution. He appears to be arguing that he is only required to make a nominal monthly payment on the restitution. However, Nicoletti has made no payments towards his restitution obligation since the date of sentencing. The United States asserts that the entire restitution obligation was ordered due at sentencing. The subsequent modification of the manner in which the debt was to be paid, from a lump sum to a schedule of minimum payments, did not alter the fact that the entire debt is due. Because the entire debt is due, the United States is authorized to enroll Nicoletti in the Treasury Offset Program. That program requires an individual who believes that his tax refunds have been improperly offset to pursue administrative remedies before repairing to court. Nicoletti has not pursued his administrative remedies, thus limiting the Court's ability to provide Nicoletti the relief he is requesting. The United States respectfully requests that the court set aside that portion of the order entered on April 30, 2021 that directs it to return to Nicoletti funds received through the Treasury Offset Program.

**I.     Introduction**

The instant matter involves the routine post-judgment collection of restitution by the United States. This Court is familiar with the history of this case. The events that are relevant to this motion are as follows. On May 7, 2019 a jury convicted Nicoletti for his role in a 2005 bank fraud conspiracy. This court sentenced him on January 30, 2020 to 70 months of incarceration. As part of his sentence, Nicoletti was ordered to pay restitution of $5,478,751.58 to the financial institutions that were defrauded by his conduct. (ECF No. 168, PageID 2345) Nicoletti then filed post-judgment motions seeking a modification of the payment terms imposed at sentencing. On July 13, 2020 the Court entered its order establishing a schedule of payments for the restitution, setting forth the minimum amount that Nicoletti was required to pay each month. (ECF No. 187, PageID 3180-3185)

Although set forth in the order dated July 13, 2020, the schedule of payments was not incorporated into an amended judgment until recently. Without citing any case law or statutory authority, Nicoletti has argued to the Court that the delay in entering the amended judgment has caused him harm because the United States has taken steps to collect the full amount of restitution imposed at sentencing.

Nicoletti's assertions are simply without merit. The administrative collection of restitution, through the Treasury Offset Program, does not violate the terms of the schedule of payments set by the Court. Nicoletti, and his wife, have failed to pursue their administrative remedies, which failure precludes the Court from providing them with the requested relief. Finally, in the event that the Court determines that the offset of the income tax refund was unwarranted, the United States must comply with the implementing policies and regulations of the program prior to returning any funds to Nicoletti. Such policies and regulations impose a mandatory six-month waiting period prior to returning funds to avoid the possibility of a duplication of the overpayment.[1]

## II. ANALYSIS

**A. Motion for Reconsideration -- Standard for Review**

Local Rule 7.1(h)(3) provides the Court's standard of review for a motion for reconsideration:

> Generally, and without restricting the Court's discretion, the Court will not grant motions for …reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

---

[1] A copy of the Memorandum of Understanding will be provided to the Court under separate cover.

Palpable defects are those which are "obvious, clear, unmistakable, manifest or plain." *Michigan Department of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002)  The United States asserts that the Court's entry of the Emergency Order, without allowing it an opportunity to respond, has prevented the United States from being able to demonstrate why the offset of Nicoletti's income tax refund was lawful.

### A. The criminal sentence

This Court imposed restitution, in the amount of $5,478,751.58, at sentencing and ordered that it was due immediately. (ECF No. 179, PageID 2901, lines 20-23) Nicoletti did not object at sentencing.  (ECF No. 179,  PageID 48, lines 9-10; ECF No. 179, PageID, lines 16-17)  Nicoletti then filed his motions to amend the judgment, seeking a modification in the manner in which restitution was to be paid.  (ECF No. 174 and ECF 185) He claimed an inability to make a lump sum payment of $5,478,751.58 and requested that the Court enter an order providing for a schedule of payments as authorized by 18 U.S.C. § 3664. (ECF No. 185, PageID 3168-3169) Recognizing Nicoletti's decreased earnings, the Court entered its order modifying the payment scheduled imposed at sentencing, changing it from a single lump sum payment to installments to be paid over time. (ECF 187, PageID 3184-3185)  The schedule of payments, in pertinent part, requires Nicoletti "[b]eginning immediately,. . . [to] pay at *least* 10% of his gross

monthly income, before surrendering to the Bureau of Prisons…" (ECF 187, PageID 3184) (emphasis added)

This schedule of payments established a minimum amount that Nicoletti was required to pay every month. However, as of the date of this motion, Nicoletti has not made a single payment to satisfy the financial obligations imposed at sentencing. [2] The only funds posted towards Nicoletti's financial obligations are the funds that were taken by the offset and that are the subject of this motion.

The post-sentencing modification of the manner in which the debt is to be paid does not alter the fact that the entire debt was due as of the date of sentencing. It is well settled that the oral pronouncement of sentencing is the determinative version of what sentence has been imposed. *See, United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008).

### B. The Treasury Offset Program

The United States is responsible for the collection of restitution due victims of crime. See, 18 U.S.C. § 3612(c). The United States is authorized pursuant to 18 U.S.C. § 3664(m)(1)(A)(i)-(ii) to enforce restitution in the same manner that it recovers fines and "by all other available and reasonable means." The United States may also, under 18 U.S.C. § 3613(a), collect restitution in accordance with

---

[2] The $400 imposed as the special assessment, pursuant to 18 U.S.C. § 3013, has not yet been paid.

the practices and procedures for the enforcement of a civil judgment under Federal and State law. One such remedy is the Treasury Offset Program.[3]

The Treasury Offset Program is a "centralized program administered by the Department of Treasury to help federal agencies collect delinquent debts owed to the federal government." *United States v Campbell*, 245 F. App'x 505, 507 (6th Cir. 2007); 31 U.S.C. § 3716 and 31 C.F. R. § 285.5. These provisions allow "the head of an executive, judicial, or legislative agency" to collect debts owed to the United States "by administrative offset" after following certain procedures. 31 U.S.C.§ -3716(a). One of those procedures involves giving the debtor "an opportunity to make a written agreement with the head of the agency to repay the amount of the claim." 31 U.S.C. § 3716(a)(4). The agency in this instance is the United States Attorney for the Eastern District of Michigan. Nicoletti does not have a payment agreement with that agency.

The provisions of 31 U.S.C. § 3716(c)(6)(A) state that a federal agency "owed by a person, a past due, legally enforceable nontax debt that is over a 120 days delinquent…*shall* notify the Secretary of the Treasury…for purposes of administrative offset." (emphasis added) Additionally, the implementing regulations state that a "creditor agency may notify the Fiscal Service of any debt

---

[3] A general explanation of the Treasury Offset Program can be found at https://fiscal.treasury.gov/top.

that is less than 120 days delinquent if the debt is past due in the amount stated by the creditor agency and otherwise legally enforceable. 31 C.F.R. § 285.5(d)(2). The Treasury regulations define "delinquent" or "past due" to mean a debt that has not been paid by the date specified in the agency's initial written demand for payment, or applicable agreement or instrument, unless other payment arrangements satisfactory to the creditor agency have been made. 31 C.F.R. § 285.5(b)

The creditor agency in this matter is the United States Attorney's Office, on behalf of the Department of Justice. The Department of Justice has its own implementing regulations for the collection of claims owed the government and for participation in the Treasury Offset Program. These regulations in turn define "past due" debts, specifically stating that "[j]udgment debts remain past due until paid in full." 28 C.F.R. § 11.11(b) Thus the fact that the Court has allowed Nicoletti an opportunity to pay his restitution over time does not change the fact that the debt is past due and subject to participation in the Treasury Offset Program.

The notice of administrative offset was sent to Nicoletti on or about February 20, 2020. It provided him with an opportunity to enter into a payment arrangement, satisfactory to the Department of Justice, for the payment of the restitution. Shortly thereafter, Nicoletti filed his motion seeking a modification of lump sum payment terms with the Court. (ECF No. 174) The Court entered its

order directing Nicoletti to immediately begin paying a minimum of 10% of his gross monthly income towards his restitution obligation. The order, and the amended judgment, both direct Nicoletti to notify the Court, the United States Probation Office and the United States Attorney of any "material change in his economic circumstances that might affect" his ability to pay restitution. (ECF 214, PageID 3443) Undersigned counsel has received no such notification from Nicoletti. He has simply failed to make payments.

The Treasury Offset Program provides Nicoletti with an opportunity for review within the agency (i.e. the United States Attorney) of the decision of the agency regarding that claim. 31 U.S.C. § 3716. A debtor must exhaust his administrative remedies by utilizing this agency review process before seeking judicial relief. *United States v Mayer*, No. 04CR100-1-SM, 2010 U.S. Dist. LEXIS 128766 (D.N.H. Dec. 3, 2010) Nicoletti has not pursued an administrative review of his claim that the funds at issue herein were not subject to the Treasury Offset Program.[4] As such, Nicoletti's motion for relief from the Treasury Offset Program is premature.

---

[4] In the instant matter, Nicoletti has stated that approximately 70% of the income tax refund is attributable to his spouse's earnings, thus leaving approximately $633 available for application against the restitution in this case. (ECF 210, PageID 3428, n.1) His spouse has a mandatory administrative remedy available to her to seek the return of her portion of the refund through IRS Form 8379. The United States Attorney has no authority to review, approve or deny her claim for an allocable share of the refund.

### C. Payment plans

The Sixth Circuit has not had occasion to provide guidance on whether compliance with the terms of a court ordered schedule of payments prevents additional enforcement of the restitution imposed at sentencing. However, Courts from other circuits that have opined on the matter are fairly uniform in their guidance. If the sentencing court orders restitution due in full at the time of sentencing, the fact that a schedule of minimum payments is also set, does not change the fact that the entire debt is due. *United States v Behrens*, 656 Fed. Appx. 789, 790 (8th Cir. 2016)(denying objection to garnishment because "the judgment specified that the amount owed was due in full on the date of judgment"); *United State v Shusterman*, 331 Fed. Appx. 994, 996 (3rd Cir. 2009)(garnishment appropriate means to collect restitution when the "judgment provides that restitution is due immediately"); *Johnson v United States*, 2018 U.S. Dist. LEXIS 191709 (ND IL 2018)(finding that settlement proceeds are subject to the Treasury Offset Program) *Cf. United States v Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018)(holding garnishment was improper where the government is seeking payment of an amount that is not currently due); *United States v Martinez*, 812 F.3d 1200, 1202 (10th Cir. 2015)(holding that the government could not garnish assets beyond amount currently due under installment schedule when

restitution order did not create immediately enforceable debt for full restitution amount).

The only case from this district that has addressed this issue has followed these same general guidelines. In *United States v Freeman*, 2019 U.S. Dist.LEXIS 97542 (EDMI June 11, 2019), Judge Steeh granted the defendant's motion to quash a writ of garnishment[5]. Judge Steeh held that the judgment did not provide that the full amount of restitution was due, rather stating that the court would set a payment plan. *Id.* at *4 Because a payment plan had not yet been established by the Court, the writ of garnishment was held to be premature.

In the instant matter, the Court ordered the full amount of the restitution due immediately. Nicoletti has an immediate obligation to satisfy the award of restitution, but he may discharge that obligation by making payments over time in compliance with the schedule established by the Court. The existence of the payment schedule does not mean the government is precluded from pursuing other avenues of collection. See, *United States v Miller*, 588 F.Supp 2d 789, 796-797 (WD MI Nov 6, 2008)

---

[5] Writs of garnishment are issued pursuant to section 3205 of Title 28 (the Federal Debt Collection Procedures Act) and section 3613 of Title 18 (the Mandatory Victims Restitution Act).

### III. CONCLUSION

The United Sates respectfully requests that the Court set aside that portion of Order Granting Emergency Motion (ECF210) that directs the United States to release the wrongfully garnished Income Tax Refund in the amount of $2,110; decline to hold the United States in contempt and grant such other and further relief as is deemed just and reasonable.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

s/Jacqueline M. Hotz
Assistant U.S. Attorney
211 West Fort Street
Detroit, Michigan 48226
(313) 226-9108
Jackie.hotz@usdoj.gov
MI State Bar P35219

Date: May 10, 2021

### Certificate of Service

I certify that I on May 10, 2021 I filed the foregoing Motion for Reconsideration and Response to Motion for Order to Show Cause with the Court's Electronic Filing System, which system will provide notice to Paul Nicoletti and to all counsel of record.

*/s/ Jacqueline M. Hotz*
*Assistant United States Attorney*