

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

-v-  Case No. 15-20382

PAUL NICOLETTI

_____/

APPLICATION TO THE COURT OF APPEALS FOR CERTIFICATE OF APPEALABILITY

Defendant, Paul Nicoletti herein requests that the Court of Appeals issue a Certificate of Appealability pursuant to 28 USC §2253(c)(1)(B) on the basis that the Order being appealed from, declined to grant a Certificate of Appealability. Defendant via his court filings in ECF No. 255 and ECF No. 257, both of which are incorporated by reference, has made a substantial showing of the denial of a constitutional right arising under the 4th, 5th, and 6th Amendment to the U.S. Constitution of the United States of America. The trial court via its order dated 11/22/22, wrongfully and illegally dispenses with Defendant's §2255 Petition without a careful analysis as to the merits of each of the claims made by the Defendant. The court denies Defendant's Petition on the basis that he has not satisfied the prejudice prong of the test set forth within Strickland v. Washington, 466 U.S. 668, 687 (1984). See ECF No. 258, pageID 4337. In Strickland, that in order to satisfy the prejudice prong, a Defendant must show there is a reasonable probability that but for Counsel's errors, the results at trial would have been different. Id. In lieu of making a determination that Defense Counsel's performance was deficient, the trial court made a blanket ruling that Defendant did not make a showing relating to any constitutional violation. Note that this blanket ruling goes without any findings of fact or conclusions of law. The court relied upon unsupported factual scenarios set forth in bullet points contained on ECF No. 258, pageID 4339, in order to prove guilt of the Defendant.

However, at the end of the day, the facts set forth in the following text, prove that not only is Defendant innocent, but they further show that Defendant was never involved in the preparation of false loan records or the gathering of the underlying information that served as a basis for the alleged false statements.

The court in its misleading recitation of facts places great emphasis upon trial testimony of alleged coconspirators, such as Robert Hance, who was a Loan Officer for Fifth Third Mortgage Company.  It is important to note that Robert Hance had a long history of lying to the government.  In fact, he was a chronic liar that admitted to lying to FBI Agent, Christine Taylor from 2005 until the time Defendant was indicted in 2015.  He admitted lying in court proceedings of all types even despite the fact he had a proffer agreement with the FBI.  ECF No. 156, pageID 2075.  Hance further testified that he first met Developer, Tyrone Hogan in May of 2005, which was over three months prior to meeting Defendant.  ECF No. 156, pageID2096, when Robert Hance submitted a false loan application for NBA Basketball Player, Ira Newble.

Despite the Court's attempt to involve Nicoletti in the fraud scheme, Robert Hance was very specific when he outlined in his trial testimony the exact players that were involved in his fraudulent loan scheme. Not once did Robert Hance ever identify Nicoletti as being one of the key players. Robert Hance mentioned Matthew Flynn, Robert Shumake, and Tyrone Hogan, as those players responsible for providing the necessary financial data as well as the falsification of the financial asset related documents. ECF No.156,pageID2085. Robert Hance accepted the sole responsibility for creating all false loan documents as well as for submission of the loan files to Fifth Third Mortgage Company for approval. ECF No. 156, pageID 2087-2090.

Robert Hance further testified that with regard to the Turon loan (3320 Franklin) it was Tyrone Hogan that asked Robert Hance for the asset qualification ratios that once provided to Tyrone Hogan, allowed him to to fabricate the false loan documents. ECF No. 156, pageID 2093. It is also critical to note that prior to being introduced to Nicoletti, Robert Hance, Robert Shumake, Matthew Flynn, and Tyrone Hogan, had a fully developed false loan scheme relying upon another title company (Clear Title Agency). ECF No. 156, pageID 2092. The trial testimony of Robert Hance was crystal clear when he stated that all falsified loan documents in the Turon loan were manipulated by either himself or by Tyrone Hogan and then Robert Hance was responsible for submission of the loan file to the lender. ECF No. 156, pageID 2101-2102. With regard to the Stephanie Glover loan, again all false loan documents were created by Robert Hance or Tyrone Hogan with absolutely no involvement by Nicoletti. ECF No. 156, pageID 2112-2117. Even the Michael Bossenberry loan documents were created by Robert Hance in cooperation with Matthew Flynn, with absolutely no involvement by Nicoletti whatsoever. ECF No. 156, pageID 2118-2122. With regard to the Chenzira Maples loan, the financial documents were fabricated by Robert Shumake and Robert Hance, with no involvement by Nicoletti. ECF No. 156, pageID 2124-2130. The Chenzira Maples loan was ultimately submitted by Alan Lucia after being carefully scrutenized by Robert Hance. ECF No. 156, pageID 2132-2133.

The bottom line is that based upon the extensive trial testimony of Robert Hance, Nicoletti is not accused even once of creating or participating in the knowing submission of false loan documents for any of the loans.

In fact to the contrary, Matthew Flynn testified at trial that Nicoletti played no part in his decision to give up his life as an honest person and to become a crooked land developer. ECF No. 154, pageID 1992-1993. Matthew Flynn futher testified that he and James Boudreau decided to develop the fraudulent scheme, do fake loans, and develop the properties. Nicoletti was not involved in the process. ECF No. 154, pageID 1993-1994. Matthew Flynn testified he conspired with Robert Hance and Tyrone Hogan knowing the loans they submitted were fraudulent. ECF No. 154, pageID 1996. Matthew Flynn testified that Nicoletti wasn't even involved in the vacant land deal and that he was capable of doing "these crooked deals without Paul Nicoletti". ECF No. 154, pageID 2000.

Matthew Flynn even admitted at trial that it was not the title company's responsibility to look to see where funds came from or to verify the borrower's income. ECF No. 154, pageID 2005-2006. Felipe Turon testified at trial as one of the straw borrowers. He stated that he was solicited as a straw purchaser by Tyrone Hogan. ECF No. 154, pageID 2009. He further testified that Nicoletti was not involved in any part of his solicitation and that all communications were between Tyrone Hogan, Robert Hance, and himself. ECF No. 154, pageID 2011-2020. Felipe Turon interestingly testified that there were other individuals at Fifth Third Mortgage Company that were involved in the illegal transactions. He further testified that Nicoletti was never involved and that he did not even know Nicoletti nor could he identify him at the time of trial. ECF No. 154, pageID 2032.

Stephanie Glover testified at trial that she was solicited as a straw purchaser by Robert Shumake. ECF No. 153, pageID 1821. Robert Shumake enlisted the services of Robert Hance, wherein between the two of them, they entered all the personal information for the loan application. ECF No. 153, pageID 1826. Glover testified

that she had never even heard of Nicoletti. ECF No. 153, pageID 1855. She testified that all information was given to Robert Hance and Robert Shumake. ECF No. 153, pageID 1852-1854. She also testified that after numerous FBI debriefings, she disavowed any knowledge of Nicoletti. ECF No. 153, pageID 1863.

Scott Lucia testified at trial as a prospective straw purchaser pursuant to having been solicited by his brother Alan Lucia. ECF No. 153, pageID 1881. Alan Lucia was the only person that spoke with Scott Lucia regarding his involvement as a straw purchaser. ECF No. 153, pageID 1882. It was Alan Lucia that told his brother, Scott Lucia, all of the details relating to how he could qualify for a multi-million dollar mortgage as well as the details as to how the payments would be made. All sounding acceptable to Scott Lucia since he trusted his brother Alan Lucia. ECF 153, pageID 1884-1887. Even the Government admits that Nicoletti was not involved in the loan submission process. On October 5, 2020, the Government filed ECF No. 45, relating to a prior appeal in Case No. 20-1137. This document filed by the Government retracts factual allegations to the Court of Appeals where the Government suggested Nicoletti's involvement in the loan submission process.

The bottom line is that despite the Government's best efforts, Nicoletti was 1) Not involved in establishing the scheme to submit fraudulent loan applications to Fifth Third Mortgage-MI, LLC. (the "Lender"); 2) Not involved in the collection or falsification of the false asset documents; 3) Not involved in the preparation or the submission of the fraudulent loan applications. Nicoletti's role as the Title Company, was to insure that the loan documents were signed by the proper parties and to insure that there was a clean chain of title. With regard to the foregoing duties, it is undisputed that the duties were completed by Nicoletti in a flawless manner, and there has never been any sort of allegation by the Government or anyone else, that the real estate conveyances were 100% accurate and performed above all industry standards.

Further, the court's order (ECF No. 258) mistakenly states that Defendant's claims for prosecutorial misconduct or perjury had been "litigated and relitigated at length before the court." ECF No. 258, pageID 4341. In reality, the Defendant's claims for prosecutorial misconduct or perjury have never been presented to the trial court, despite the fact that Defendant asked otherwise. Even the Court of Appeals notes in its Opinion dated 4/25/22, in Case No. 21-1502, where the court states "Nicoletti did not raise a prosecutorial misconduct or perjury claim in his first Appeal."

In Schlup v. Delo, 513 U.S. 298 (1995) the court noted the failure to consider the claims will result in a fundamental miscarriage of justice, recognizing a narrow exception where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense.

The bottom line is that Defendant has shown prejudice in that, had the FBI Agent not lied about the identity of the Lender, the Indictment would have been dismissed and there would have been no criminal case whatsoever.

Based upon Defendant's Petition, he has alleged constitutional violations not only during the trial of this matter, but also prior to the time of trial and during the course of pretrial proceedings. The trial court to date, has not addressed any of the violations during such times. Defendant has alleged violations relating to the 4th Amendment, Fifth Amendment, Sixth Amendment, Eight Amendment, and the 14th Amendment.

WHEREFORE, Defendant requests that the Court of Appeals issue a certificate of appealability in this matter.

Dated: 12/5/22    Signed: [signature]

Paul Nicoletti



Paul Nicoletti Reg. 55819-039
Federal Corrections Institution
P.O. Box 1000
Morgantown, WV 26507

Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, MI 48226

PITTSBURGH PSDC 152
WED 07 DEC 2022 PM